IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELAWARE RIVER AND BAY AUTHORITY, | : | C.A. No. 07-0008-SLR |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| JAN D. KOPACZ, | : | |
| Defendant. | : | |

## PLAINTIFF DRBA'S MOTION IN LIMINE

I.  Background

DRBA seeks a declaratory judgment that it has no further maintenance or cure obligation to Jan Kopacz, a seaman who reported an on the job injury on December 24, 2004. Kopacz filed a counterclaim seeking additional maintenance payments, as well as consequential damages, attorneys' fees, interest and punitive damages.

The law of maintenance arises out of general maritime law, and is designed to provide an injured seaman with the cost of food and lodging comparable in quality to that which he was entitled at sea. *Barnes v. Andover Co., L.P.*, 900 F.2d 630, 634 (3d Cir. 1990). As long as the injury occurs on the job, the seaman is entitled to maintenance unless it is provided by others at no expense to the seaman. *Shaw v. Ohio River Co.*, 526 F.2d 193 (3d Cir. 1975). Maintenance is basically a contractual remedy, and neither fault nor negligence plays any role in the determination of the ship owner's obligation.

The issues before this Court are very narrow. The Court must decide whether Kopacz is owed further maintenance, and, if so, whether the DRBA's failure to pay was wrongful, thereby subjecting it to consequential damages. Kopacz has raised a number of issues in his portion of the proposed Pre-trial Order which are completely irrelevant

and/or unsupported by any proper evidence. Therefore, DRBA seeks to preclude such evidence at the forthcoming trial.

II.     Discussion

    A.     Evidence regarding the August 9, 2002 incident

Kopacz made a claim for an earlier on-the-job injury in August of 2002, which became the subject of very contentious litigation before Judge Sleet. *Kopacz v. D.R.B.A., et al.*, (D. Del.) C.A. No. 04-911 (GMS) ("*Kopacz I*"). Throughout that litigation, the DRBA maintained that the accident to which the injury was attributed never happened. Although the jury agreed, it nonetheless awarded maintenance, cure, and consequential damages. For strategic and economic reasons, the DRBA sought post-trial relief with respect to the consequential award only. Judge Sleet vacated the consequential damage award and Kopacz' appeal is pending.

In his portion of the proposed Pre-Trial Order[1] Kopacz seeks to have the Court take judicial notice of the entire case file of the earlier litigation, both at the District Court and Appellate levels. He further seeks to introduce evidence that, prior to December 24, 2004, he was "abused and harassed" because of the fact that he was "instrumental in helping a union to be certified" at the ferry.[2] The trial of that case lasted six days, involved a ferry passenger who is not presently before the Court, and produced approximately 15 witnesses and more than 150 exhibits. Kopacz apparently seeks to re-litigate that case here, which would be inappropriate, prejudicial and would result in unnecessary expense and time.

---

[1] The Pre-Trial Order has not yet been filed, and is in the process of being finalized.
[2] Kopacz attempted to introduce evidence of this harassment in *Kopacz I*, however Judge Sleet precluded the evidence as it would have created a "trial within a trial."

The DRBA respectfully requests that this Court preclude Kopacz from re-litigating the issues which arose from an accident which allegedly occurred more than two years prior to the incident which is the basis of the case before it. In the first place, the claims with respect to the first accident have already been litigated. Moreover, the DRBA was never put on notice that Kopacz intended to re-litigate those issues, and it would be prejudiced if it was now required to again defend those claims. Finally, those claims are completely irrelevant to the case at bar, and it would be a complete waste of the resources of both this Court and the parties to address them in this litigation.

B.   Medical Conditions

On August 9, 2007, Kopacz alleged for the first time in this litigation that he has developed high blood pressure and insomnia as a result of the DRBA's failure to pay maintenance. He also implies that his back pain and leg weakness are also connected to DRBA's failure as well. As the Joint Pre-Trial Order is still in the process of being finalized, the relevant items from Kopacz' Contested Facts are as follows:

> Kopacz has suffered from back pain and his legs give out, and that has occurred while he was not receiving maintenance.
>
> Kopacz has suffered from an inability to sleep, high blood pressure and great anxiety and worry due to a lack of funds since his long term disability payments stopped.

The DRBA moves to preclude any evidence that Kopacz suffered any exacerbation of any injury or incurred any pain, suffering or any health problem as a result of the DRBA's alleged failure to make additional maintenance payments to Kopacz. This motion rests on two distinct legal bases.

In the first place, Kopacz never disclosed these alleged injuries or medical conditions in his answer to interrogatories, despite the fact that he was specifically asked

3

that question. (See Ex. A, Interrogatories; Ex. B, Unverified Answers to Interrogatories; and Ex. C, E-mail from counsel dated August 8, 2007). A passing reference to these conditions at his July 18, 2007 deposition does not constitute sufficient notice that allows the DRBA to explore these allegations.

More importantly, Kopacz has no expert report from a medical professional which in any way links any of those conditions to any failure to pay by the DRBA.[3] To the contrary, his medical expert admits that the high blood pressure is unrelated to the work accident in question. (See Ex. D, Report of Dr. Stephens dated June 8, 2007). Kopacz is not qualified to testify as to causation with respect to any other medical condition, and therefore the evidence must be precluded.

III.    Conclusion

Plaintiff DRBA respectfully requests that all evidence be precluded concerning *Kopacz I*, as well as evidence of any consequential damages related to the aggravation or causation of any medical condition.

Dated: August 13, 2007

ROSENTHAL, MONHAIT & GODDESS, P.A.

OF COUNSEL:
Mary Elisa Reeves, Esquire
DONNA ADELSBERGER
 & ASSOCIATES, P.C.
6 Royal Avenue
P.O. Box 530
Glenside, PA 19038-0530
(215) 576-8690

By:  /s/ Carmella P. Keener
Carmella P. Keener (DSBA No. 2810)
919 N. Market Street, Suite 1401
Citizens Bank Center
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
ckeener@rmgglaw.com
*Attorneys for Plaintiff,*
*Delaware River and Bay Authority*

---

[3] The fact that one or more conditions could be linked to the accident is of no consequence in this litigation. Damages for pain and suffering as a result of the accident, as opposed to a failure to pay, are part of Kopacz' Jones Act case which is pending in state court. *Kopacz v. D.R.B.A.*, Del. Super., C.A. No. 06C-09-083-JEB.

## CERTIFICATE OF SERVICE

I, Carmella P. Keener, hereby certify that on August 13, 2007, I caused a copy of the foregoing **Plaintiff DRBA's Motion in Limine** to be electronically served via CM/ECF upon the following:

>Bernard A. VanOgtrop, Esquire
>Seitz, Van Ogtrop & Green, P.A.
>222 Delaware Avenue, Suite 1500
>P.O. Box 68
>Wilmington, DE 19899

>/s/ Carmella P. Keener
>Carmella P. Keener (DSBA No. 2810)
>Rosenthal, Monhait & Goddess, P.A.
>919 N. Market Street, Suite 1401
>P.O. Box 1070
>Wilmington, DE 19899-1070
>(302) 656-4433
>ckeener@rmgglaw.com
>*Attorney for Plaintiff,*
>*Delaware River and Bay Authority*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DELAWARE RIVER AND BAY
AUTHORITY,

        Plaintiff

v.

JAN D. KOPACZ,

        Defendant.

C.A. No. 07-0008-SLR

### PLAINTIFF DRBA's INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JAN KOPACZ

#### INSTRUCTIONS

When you are asked to identify an individual or entity, please give the name of the individual or entity, a complete address, phone number, any relevant account number(s) and the names of any representatives at the entity with whom you have had contact. If you are asked to identify a document, please describe the document in detail by date, origin, type of document, and provide complete copies of all such documents within your custody and control.

#### INTERROGATORIES

1. Identify all doctors or medical providers by whom you have been treated or examined since 1999, including, but not limited to, any provider who examined you for the purpose of obtaining, maintaining or renewing any merchant mariner document, pilot's license or any other license or document or for the purpose of procuring insurance, disability benefits, and/or for any litigation.

2. Identify all sources of income, including, but not limited to, income related to employment, investments, insurance and social security, since 1999.

3. Do you currently hold or have you held a pilot's license? If the answer is in the affirmative, please state the type or class license held since 1965, and the dates of issue. Provide a copy of the latest pilot's license held by you.

4. Identify all FAA Flight Surgeons by whom you have been examined since obtaining your pilot's license.

5. Identify all FAA or other agencies with whom you have communicated for any reason since obtaining your pilot's license.

6. For each month since December 24, 2004, state the total amount of maintenance to which you claim you were/are entitled, and itemize each living expense included in your claim (i.e. mortgage, electricity, etc.), identifying the person or entity to whom you made payment, the date on which payment was made, and the amount paid to such person or entity on a monthly basis.

7. Describe any and all medical treatment for the December 24, 2004 injury that you have received since February 12, 2007.

8. Describe all consequential losses which you claim resulted from any action or inaction by the DRBA, including, but not limited to, any physical, psychological, financial or other damages for which you are making a claim. For each such item of damage or loss, identify all witnesses and documents which support your claim.

9. If you claim your credit rating was/has been impaired in any way, identify each and every entity by whom you have been denied credit or charged a higher interest rate as a direct result of any action or inaction by the DRBA.

10. If you claim that you have been prevented from seeking any medical treatment as the result of any action or inaction by the DRBA, please describe the date and type of treatment sought, the provider who refused to treat you, and the efforts you made to obtain coverage for that treatment through the medical insurance provided to you as a result of your employment with the DRBA, by the Veteran's Administration, Social Security or through any other program.

11. Identify all diaries, notes, calendars, notebooks, letters, e-mails, documents, recordings, or electronic files in which you have recorded or received any information about the December 24, 2004 accident, your medical condition, any efforts to obtain medical or other benefits, and/or any psychological, physical, financial or other damages suffered by you as a result of the December 24, 2004 accident or any action or inaction by the DRBA.

12. Provide copies of all W-2 forms, 1099 forms and other tax information for the years 1999- present.

13. Identify all witnesses to the December 24, 2004 accident and/or to any damages suffered by you as a result of the accident or any action or inaction by the DRBA.

14. Identify all witnesses that you intend to call at trial.

15. Identify all documents that you intend to introduce at trial.

16. Provide copies of all documents that are referenced in your responses to these interrogatories.

ROSENTHAL, MONHAIT & GODDESS, P.A.

OF COUNSEL:
Mary Elisa Reeves, Esquire
DONNA ADELSBERGER
 & ASSOCIATES, P.C.
6 Royal Avenue
P.O. Box 530
Glenside, PA 19038-0530
(215) 576-8690

By: *Carmella P. Keener*
Carmella P. Keener (DSBA No. 2810)
919 N. Market Street, Suite 1401
Citizens Bank Center
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
ckeener@rmgglaw.com
*Attorneys for Plaintiff,*
*Delaware River and Bay Authority*

4

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DELAWARE RIVER & BAY
AUTHORITY

C. A. No. 07-008

v.

JAN D. KOPACZ

### DEFENDANT'S ANSWERS TO PLAINTIFF'S INTERROGATORIES

#### General Objection

This lawsuit involves Kopacz's right to maintenance for the period following December 24, 2004, when he was injured while working on board one of DRBA's ferries. Discovery is proper, therefore, if it could reasonably lead to admissible evidence in the trial of the maintenance issues involved. Kopacz objects to any effort by DRBA to conduct a fishing expedition which would be unduly oppressive, expensive, overburdening and not lead to admissible evidence.

1. Objection as not calculated to lead to admissible evidence. Furthermore, DRBA already has virtually all of this information either by reason of discovery in a prior lawsuit or by reason of being the employer of Kopacz and receiving records in the usual course of that employment. DRBA should be aware that Kopacz has seen Dr. Montross-Lopez, his family doctor, and Dr. Mark Menendez of Coastal Ankle and Foot, for treatment due to his diabetes condition. DRBA can probe this more fully at deposition.

2. Object as not calculated to lead to admissible evidence. Since December 24, 2004 Kopacz has received no earned income but has received payments from The Hartford, Social Security and from the sale of a house which he owned.

3.- 5. Objected to as not calculated to lead to admissible evidence.

6. Kopacz submitted receipts for monthly expenses as follows as of April 14, 2004:

| | |
|---|---|
| Mortgage | $1498.36 |
| Electricity | 174.13 |

|            |           |
|------------|-----------|
| Gas Heat   | 131.45    |
| Telephone  | 44.08     |
| Food       | 320.00    |
| Water      | 22.92     |
| Total      | $2190.94  |

Kopacz's mortgage payment remained level until September 2005 when it went up slightly, probably due to an adjustment in the escrow. In February 2006 it rose to $1882.20 due to a refinancing, when the interest rate rose significantly. The monthly mortgage went up above $2000 in January 2007 due to an increase in the real estate taxes. Food expense has also increased to about $400 as of the fall-winter of 2005. Monthly expenses have varied, but Kopacz believes the averages he submitted in April 2004 are fair. Kopacz is willing to agree that his monthly maintenance should be calculated by the court as $2190.94 if DRBA also agrees, and Kopacz will forgo making a claim for any increases if DRBA will agree to this. If it does not, Kopacz is prepared to prove his monthly expenses from January 2005 and will claim all increases as they have developed.

7. Kopacz has received treatment from Dr. Olivi and DRBA has copies of all of the records. He has also been examined by Dr. Stephens, and DRBA has a copy of the report.

8. This will be covered at deposition and supplemented thereafter, if necessary. In summary, Kopacz has suffered from constant worry about trying to make ends meet and not run out of funds due to the lack of income from having his disability payments terminated. If DRBA agrees to eliminate some of the issues, Kopacz will not claim for damage to his credit, but that awaits DRBA's agreement to the other issues. Kopacz has been referred to a collection bureau at least by Beebe due to non-payment of his bill. This can be covered at deposition if agreement is not reached.

9. There is no claim for impairment of credit in connection with this lawsuit if agreement is reached on the other outstanding issues. Otherwise, this can be covered at deposition and supplemented thereafter.

10. Kopacz had difficulty scheduling an appointment with Dr. Olivi because DRBA had notified Dr. Olivi's office that it would not authorize further treatment except under certain conditions. Dr. Olivi's secretary interpreted that to mean that no further treatment was authorized, and she delayed scheduling another appointment with Dr. Olivi. Eventually the problem was straightened out, but there was a delay in obtaining an appointment.

11. These will be produced at deposition.

12. These will be produced.

13. No witnesses beyond those already identified.

14. Not yet decided.

15. Not yet decided.

16. Being produced.

                                    SEITZ VAN OGTROP & GREEN, P.A.

                                    /s/ Bernard A. Van Ogtrop
                                    BERNARD A. VAN OGTROP, ESQ. (447)
                                    Bvanogtrop@svglaw.co
                                    222 Delaware Avenue Suite 1500
                                    Wilmington, DE 19899
                                    (302) 888-0600
                                    Attorneys for defendant

# EXHIBIT C

## Lisa Reeves

**From:** <smithsealaw1@verizon.net>
**To:** <mreeves@dlalawyers.com>
**Sent:** Wednesday, August 08, 2007 1:16 PM
**Attach:** Stipulated Facts Memorandum - Kopacz II.wpd

Lisa,

Attached is a memorandum showing my thoughts about your proposed stipulated facts. I will have some proposed stipulations also, but they have not yet been prepared. You can at least work on the attached while I am finishing my portion of the Pre-Trial Order. I hope to have it finished tomorrow or, at the latest, on Friday.

Bernie was handling the Affidavit issue. However, until you receive it, you may consider that the answers are under oath and act accordingly. That's the best I can do until Bernie gets the sworn Affidavit to you.

I'll send my portions of the Pre-Trial Order as soon as I can.

Al Smith

# EXHIBIT D

DAVID C. STEPHENS, M.D.
SILVERSIDE MEDICAL CENTER
2700 SILVERSIDE ROAD, SUITE 1-A
WILMINGTON, DELAWARE  19810
PHONE (302) 478-8601 • FAX (302) 478-8604

BOARD CERTIFIED: AMERICAN ACADEMY
OF ORTHOPAEDIC SURGEONS

OFFICE ORTHOPAEDICS

June 8, 2007

Bernard A. Van Ogtrop, Esquire
Seitz, Van Ogtrop & Green, P.A.
P.O. Box 68
Wilmington DE 19899

Re: Jan D. Kopacz

Dear Mr. Van Ogtrop:

I saw Jan Kopacz on 6/6/07 at your request for purposes of a medical evaluation. Along with a history and physical exam, I reviewed clinical information concerning this claimant including medical records from: Johns Hopkins Bayview, Dr. A. Olivi, and Bayhealth. I also reviewed a job description for able-bodied seaman with the Delaware River and Bay Authority.

Jan is a 60 year old right-handed male who reports he was injured at work on 12/24/04 while employed as an able-bodied seaman/deck hand on the Cape May – Lewes ferry. At that time on the last trip of the day he was hooking up a cable from the ship to shore power and was shorthanded. He was working with one assistant instead of two and the heavy cable was too heavy for him and he fell against a bulkhead injuring his lower back.

He reports that he attended Beebe Hospital the following morning and underwent x-rays of his lumbar spine. He reports he followed up with his primary care physician Dr. E. Lopez who referred him to Dr. Quinn for evaluation. He reports he underwent physical therapy with some degree of relief.

MRI exam of the lumbar spine of 3/25/05 demonstrated a bulging disk at L5 – S1 in the midline as well as a frankly herniated L4 – L5 disc broad-based extending into the lateral recesses bilaterally.

Jan saw Dr. Olivi on 1/9/06 at Johns Hopkins. Based upon his evaluation including review of imaging studies, he recommended laminectomy at L4 – L5 and bilateral foraminotomy which was performed on 3/8/06.

He was seen regularly postoperatively by Dr. Olivi and noted episodes of give way involving his left lower extremity including episodes on 4/11/06 and 4/15/06. These episodes gradually became less frequent but remain present according to the patient. On 2/12/07 Dr. Olivi noted that Jan was doing "reasonably well".

At the present time Jan notes that he has some low back pain which is not severe and episodes of give way involving his left lower extremity approximately 2 times per month. He also notes numbness involving his right forefoot and left leg/foot/ankle from midcalf to toes circumferentially.

He reports that he has not returned to work at the present time and has applied for and received Social Security disability. He sees only his primary care physician in follow-up and takes only ibuprofen medication as needed.

His prior history is that at work approximately 1 year prior to the work injury in question he sustained injury involving his low back when his vehicle was backed into. He underwent physical therapy and his symptoms resolved in approximately 3 months.

**PAST MEDICAL HISTORY:**

His primary care physician is Dr. Elisa Lopez.
He underwent appendectomy in 1991.
He has diabetes type II for which he takes Glucophage and Avandia.
He has hypertension for which he takes medication, name not known.

**FAMILY/SOCIAL HISTORY:**

He denies tobacco or alcohol use.
He has attended college 3.5 years.
He has been employed as a seaman since 1995.

**CURRENT MEDICATIONS:**

Ibuprofen 800 mg 3x daily as needed
Glucophage
Avandia
hypertension medication

**PHYSICAL EXAM:**

Height= 1.92 m     75.6 inches
Weight= 115 kg.    253 lbs.

Body Mass Index= 31.2

Exam demonstrates an adult male ambulatory without support and with a normal stance and gait pattern.

He has a normal lumbar lordosis on physical exam without list present. A well-healed midline lumbosacral incision is present reflecting his previous lumbar spine surgery. Active lumbar spine motion is 70 degrees flexion with 25 degrees extension and 20 degrees side bending present to right and left side each. No guarding or spasm is noted with active lumbar spine motion in any plane. His lumbar spine motion is clinically within normal limits.

Jan Kopacz
3

No focal motor weakness is present in either lower extremity. His lower extremity reflexes are symmetrically active bilaterally. No thigh or calf atrophy is present by measurement. Hypesthesia to pin and light touch is noted circumferentially from left midcalf distally.

IMPRESSION:

1. Herniated nucleus pulposus, L4 – L5 (12/24/04); status post laminectomy L4 – L5 and bilateral neural foraminnotomy (3/8/06)

2. Diabetes mellitus, type II-not related to the work accident in question

3. Hypertension by history-not related to the work accident question

DISCUSSION:

1. I have noted the examinee's history of injury, treatment history, findings on exam at present, and current diagnoses above.

2. Based upon review of the enclosed records, history from the claimant, and findings on exam, I believe the treatment which he has undergone for his lumbar spine problem has all been reasonable and necessary and related to the work accident in question. I believe this treatment has been curative as opposed to palliative based upon his history of injury, findings on exam preoperatively including imaging findings, treatment rendered, and findings on examination at the present time.

3. Based upon review of his job description as an able-bodied seaman, I do not believe he is fit for return to this sort of work because of the likelihood of recurrence of symptoms and aggravation of his lumbar spine condition in view of the heavy lifting requirements necessary for completion of his job duties.

If I can provide any additional information or clarification of the above, please contact me at: 302-478-8601.

Yours truly,

*David C Stephens*

David C. Stephens M.D., CIME