IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELAWARE RIVER AND BAY AUTHORITY, | : | C.A. No. 07-0008-SLR |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| JAN D. KOPACZ, | : | |
| Defendant. | : | |

## JOINT [PROPOSED] PRETRIAL ORDER

### (1)    Nature of Action

Plaintiff DRBA filed this admiralty and maritime action pursuant to 28 USCA §2201 and 28 USCA §1333 seeking a declaratory judgment that it has met all of its legal obligations to pay maintenance and cure to the defendant Jan Kopacz in connection with an on the job injury that allegedly occurred on December 24, 2004.  Kopacz answered the complaint and made a counterclaim against Delaware River and Bay Authority ("DRBA") seeking past and future payments of maintenance and cure, as well as consequential damages, prejudgment interest, attorneys' fees and punitive damages arising from the alleged failure to pay maintenance and cure concurrently with the need.

### (2)    Basis of Jurisdiction

This is an admiralty and maritime claim pursuant to 28 U.S.C.A. §1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

### (3)    Stipulated Facts

1.    From January 24, 2001, Jan Kopacz was employed as a full time, permanent deckhand on board the DRBA's ferries.

2.    Jan Kopacz reported an on the job injury on December 24, 2004.

1

3.     According to DRBA's records, Kopacz worked on December 29, 30 and 31. He called in sick on January 3, and then worked on January 4, 5 and part of January 6, 2005 on which date he was directed to see a doctor at Pace Orthopedics for a determination of his fitness for duty. For timekeeping purposes, he was declared not fit for duty retroactive to January 5, 2005. Although he continues to be not fit for duty as a seaman on DRBA ferries, he reached maximum medical improvement on April 5, 2007.

4.     Jan Kopacz received 100% of his weekly wage ($9,906.67) from January 5, 2005 through April 5, 2005. It was DRBA's policy to pay seamen their full wages for the first 90 days following an on the job injury which rendered the seaman unable to perform his duties.

5.     As there was a delay in processing his long term disability benefits, the DRBA paid Kopacz the sum of $4,624.93, which represented the value of his accumulated sick and annual leave.

6.     In June 2005, Jan Kopacz received a lump sum payment from the Hartford Insurance Company in the amount of $4,612.01, representing a payment of disability benefits retroactive to April 5, 2005, once his long term disability (LTD) claim was approved.

7.     In July 2005, Jan Kopacz received an additional check for $1,191.30, which represented an underpayment by Hartford in his initial check.

8.     The insurance company which provided the long term disability coverage to all of DRBA's full-time permanent employees before Hartford was Pennsylvania Manufacturer's Association (PMA).

2

9.     Under the prior policy, PMA required that DRBA pay its seaman "maintenance wages" in the amount of $450 per month, which amount was deducted from the LTD benefit paid to the seaman.

10.     According to Hartford's records, Jan Kopacz received LTD benefits from July 2005 though October 2006 in the amount of $2,192.11 on a monthly basis, for a total of $32,713.95 before taxes.

11.     By letter dated October 6, 2006, Jan Kopacz was notified by the Social Security Administration ("SSA") that he was eligible for disability benefits retroactive to July 2005.

12.     On or about October 12, 2006, Jan Kopacz received a lump sum payment of $17,142.00 from SSA, representing the benefit retroactive to July 5, 2005.

13.     As set forth in its letter of October 27, 2006, the LTD carrier demanded that he reimburse $16,607.92 which had been overpaid to him in light of the retroactive SSA benefit paid.

14.     Jan Kopacz refused to repay this amount to LTD, and his LTD benefits were suspended as a result. He has not received any further LTD benefits to this day.

15.     During discussions between counsel, Kopacz sought to have DRBA repay the sum sought by Hartford, which led to the filing of this declaratory judgment action by the DRBA so that its rights and obligations could be determined by this Court.

16.     During this time, DRBA's counsel attempted to negotiate a compromise whereby DRBA would consider repaying the amount, as long as Kopacz agreed to reimburse the DRBA if this Court concluded that DRBA's position was correct. Counsel for Kopacz rejected this approach, and to date no repayment to the Hartford has been

3

made by either party. Kopacz' counsel said his client would obey any Court order compelling him to repay any sum to DRBA but he was unwilling to have his client make any written agreement with DRBA concerning repayment

17.     Since October 2006, Kopacz has been receiving monthly benefits of $1,167.00 from SSA.

18.     Jan Kopacz' living expenses from January 5, 2005 through April 5, 2007 totaled $2,190.00 monthly.

19.     As of April 5, 2007, Jan Kopacz had reached maximum medical improvement with respect to any injury sustained on December 24, 2004.

20.     Jan Kopacz has not been fit to return to duty as a seaman on DRBA's ferries since January 5, 2005.

21.     Jan Kopacz has not been denied any medical treatment following the December 24, 2004 injury as a result of any action or inaction by DRBA.

22.     Jan Kopacz did not pay the premiums for the LTD policy, and the benefits were provided to him without any charge to him.

23.     LTD benefits have been made available to all permanent, full time employees of the DRBA for more than 25 years.

24.     Once he became disabled, Kopacz remained eligible for medical and life insurance benefits and did not pay any portion of the premium for these benefits.

25.     While employed by the DRBA, Kopacz was not provided with any food or lodging onboard DRBA ferries on which he served.

4

**(4)**    **Contested Facts**

A.    Plaintiff DRBA's Contested Facts

1.    Kopacz worked his regular shifts on the ferry until January 6, 2005, when he was declared unfit for duty.

2.    Kopacz received $4,624.00 in sick and annual leave while waiting for LTD approval.

3.    He also received $1,770.00 from the DRBA, who mistakenly believed that Hartford would deduct $450 from his benefits.

4.    Kopacz agreed to refund any overpayment to Hartford that was triggered by his receipt of disability benefits from SSA, which were considered primary under the LTD policy.

5.    Kopacz received 100% of his wages for the first 90 days following the declaration that he was unfit for duty, and thereafter received the equivalent of 60% of his wages from either the LTD carrier, Social Security, or a combination of both.

6.    DRBA has met all of its cure obligations, and has paid all legitimate medical bills submitted in connection with this injury.

7.    DRBA has filed a motion in limine with respect to the plaintiff's attempt to introduce any evidence with respect to an alleged on the job injury which occurred in 2002, which was litigated in 2006 ("*Kopacz I*"). If, and to the extent that the motion is denied, however, the DRBA will prove the following facts:

> a) The jury found that Kopacz was not struck or injured by any
> vehicle on August 9, 2002.

5

b) The District Court granted DRBA's Rule 50 Motion and vacated the award of consequential damages.

c) The DRBA did not seek a post trial review of the award of maintenance and cure for strategic and economic reasons, however, it continues to believe that such an award was in error. This is raised by DRBA only to rebut any argument by Kopacz that DRBA made any admissions regarding its maintenance policy by paying a portion of the jury award.

d) The jury's award in *Kopacz I* has no precedential value in this case.

8.    The DRBA also does not understand the relevance of Kopacz' allegations concerning Dr. Anapole. To the extent that this evidence is admitted, however, the DRBA will prove the following:

a) As soon as management learned that Kopacz had alleged a serious injury over the holidays, he was referred to an orthopedist to evaluate his fitness for duty.

b) When Kopacz requested authorization to seek treatment with another physician, such authorization was immediately granted.

c) With the exception of a "yoga therapist" who has refused to provide office notes or tax identification information, all bills presented to the DRBA for payment have been satisfied.

9.    Kopacz has alleged that he "faces the prospect of litigation by Hartford to recover all of the long term disability payments." To the extent it is relevant, there is

6

absolutely no evidence to support that allegation, except to the extent that the Hartford has sought a refund in the amount of $16,607.92, which Kopacz agreed to refund if and when he was approved for SSA benefits.

B.    Defendant Kopacz' Contested Facts

1.    Kopacz began working part-time for DRBA and he became a full-time permanent employee on January 24, 2001, with the rating of Able-bodied Seaman.

2.    Kopacz suffered an on-the-job injury on August 9, 2002 and was out of work for 3-4 months.

3.    Kopacz incurred about $10,500 in medical expenses, and none of these were paid by DRBA.

4.    Kopacz was not paid maintenance while not fit for duty, and he started suit to recover his maintenance and cure and related damages for failure to pay, and this suit was in New Jersey.

5.    Kopacz later started a suit in this Court for damages under the Jones Act and the general maritime law for unseaworthiness, and the two were consolidated under C. A. No. 04-911 and assigned to Judge Sleet.

6.    The consolidated cases were tried to a jury which answered interrogatories which held that Kopacz was entitled to maintenance and cure; that DRBA was unreasonable for failing to pay them and damages of $47,500 were awarded for failure to pay in addition to the award for maintenance and cure and sick and annual leave which Kopacz had to use because he had no income otherwise.

7

7.    The verdict was returned on February 13, 2006, and shortly thereafter DRBA paid the maintenance and cure, sick and annual leave and medical expenses, but it did not pay the award of $47,500 for consequential damages.

8.    After post-trial motions were decided, an appeal was taken; briefs were filed and the case was submitted for disposition, without argument, on July 13, 2007. (C.A. No 06-3585) No decision has been handed down yet, and one of the issues to be decided is whether punitive damages can be awarded for willful failure to pay maintenance and cure.

9.    Prior to the accident of August 9, 2002 Kopacz was instrumental in helping a union to be certified and after the election he gave an affidavit against some of the officers on his ferry, including the Captain, for what he thought were unfair labor practices so far as union membership was concerned.

10.    After he gave that Affidavit, Kopacz was subjected to abuse and harassment by the Captain and others.

11.    From the date of his return to work following the August 9, 2002 incident until December 24, 2004 Kopacz was the subject of discrimination in overtime assignments and was otherwise harassed by management.

12.    The incident which triggered the back injury on December 24, 2004 was the subject of a Personal Injury Report and a statement by Kopacz, which DRBA demanded.

13.    When Kopacz sought authorization to seek medical help for the injury he suffered on December 24, 2004 he was instructed by DRBA to see Dr. Anapole of Pace Orthopedics in Cape May County, New Jersey.

14.    Kopacz then lived in southern Delaware, so to go to Dr. Anapole's office he had to drive to Lewes; ride the ferry for 1 ½ hours to Cape May and then drive to Cape May Courthouse.

15.    There were orthopedists near Kopacz' home in southern Delaware, and DRBA authorized some of its employees to be treated by those orthopedists prior to instructing Kopacz to see Dr. Anapole.

16.    Kopacz was treated by Dr. Anapole from January 12, 2005 until March 2005 when DRBA's counsel obtained authorization for him to be treated by an orthopedist of his choice in southern Delaware.

17.    At no time during his treatment of Kopacz did Dr. Anapole have any diagnostic studies, such as x-rays, MRIs, CT scans, etc., performed.

18.    After DRBA authorized him to see a local orthopedist, Kopacz saw Dr. Quinn, whose office was in Georgetown, DE.

19.    Diagnostic studies demonstrated a herniated disc at L4-L5, and Kopacz had this surgically repaired by Dr. Alessandro Olivi at the Johns Hopkins Bayview Medical Center on March 8, 2006.

20.    Following the injury on December 24, 2004, Kopacz was off for several days; then worked for three days and was off again for a few days.  His disability period began on January 5, 2005.

21.    In accordance with DRBA's regular policy, Kopacz was paid his base wages for 90 days, until April 4, 2005, and then switched to DRBA's long-term disability carrier, The Hartford Life and Accident Insurance Company (Hartford).

22.    After the initial 90 days, DRBA stopped paying anything and referred Kopacz to the Hartford to seek long term disability payments.

23.    It was DRBA's policy to pay sick and annual leave benefits whenever a determination concerning whether the seaman's disability stemmed from an on the job injury was delayed, and pursuant to that policy DRBA paid Kopacz his accrued sick and annual leave benefits while Hartford was determining whether Kopacz was entitled to long term disability payments under its policy. It was also DRBA's policy to restore the sick and annual leave credits to the seaman once a favorable determination was made, and Kopacz' sick and annual leave was restored to him after Hartford approved his long term disability application.

24.    The sick and annual leave benefits which seamen accrued while working for DRBA had nothing whatsoever to do with the seamen's rights to maintenance.

25.    DRBA provided its full-time permanent employees with long term disability insurance for any disability which lasted for more than ninety days, and this fringe benefit had been made available to all of DRBA's full-time permanent employees, seamen and non-seamen alike, for some 25 years or so before Kopacz was injured on December 24, 2004.

26.    The previous carrier was Pennsylvania Manufacturers Association, and when a seaman was receiving benefits under the PMA policy, DRBA would continue to pay maintenance at the rate of $15 per day and PMA would subtract this from its monthly benefit.

27.    DRBA paid maintenance to seamen at the rate of $15 per day ($450 per month), and this was deducted by PMA from its long term disability payments.

10

28.    Hartford approved Kopacz' application in July 2005 and began sending his monthly benefit payments, which continued until October 27, 2006.

29.    DRBA also paid Kopacz maintenance at the rate of $15 per day, but Hartford said this was not necessary so it was stopped and thereafter Kopacz only received the monthly long term disability payment of $2,192.11 from Hartford.

30.    Under the Hartford policy, Kopacz was entitled to receive monthly benefits for the first two years if he was unable to perform any of the essential duties of his employment and after two years he was entitled to receive the benefits if he was unable to perform any of the essential duties of any occupation, and the benefits were to be paid until he reached age 65, which would be sometime in 2012. The benefits were spelled out in the policy, and no reference was made in the policy to maintenance.

31.    Under the Hartford policy, which certainly speaks for itself, Hartford was entitled to a credit if Kopacz received income from certain other sources, and one of these was Social Security.

32.    By letter dated October 6, 2006, Social Security advised Kopacz that he was eligible to receive Social Security benefits and that he would receive a lump sum payment and monthly payments thereafter. The amounts have been stipulated.

33.    Kopacz duly reported the receipt of the Social Security letter to Hartford, and by letter dated October 27, 2006 Hartford demanded repayment of a certain amount (stipulated) and that it was suspending his monthly benefit until the demanded sum was paid.

34.    Kopacz demanded that DRBA repay the sum to Hartford but DRBA refused, and DRBA has paid nothing to Kopacz since then.

11

35.     Kopacz appealed Hartford's suspension of his payments, and the appeal was denied.

36.     Kopacz has furnished Hartford with all of the information it requested in order to determine if Kopacz is disabled after the two year anniversary but Hartford has not yet made the determination as to what benefits Kopacz is entitled to under the policy.

37.     There are outstanding disputes with Hartford which may have to be resolved by ERISA litigation.

38.     DRBA has paid no maintenance since April 5, 2005 and Hartford has paid no monthly benefits since October 27, 2006.

39.     Kopacz has suffered from back pain and his legs give out, and that has occurred while he was not receiving maintenance.

40.     Kopacz has suffered from inability to sleep, high blood pressure and great anxiety and worry due to a lack of funds since his long term disability payments stopped.

41.     Kopacz has had to alter his lifestyle because his income has been reduced and his monthly expenses have gone up.

42.     Kopacz has had to curtail a number of his activities due to a reduction in his available funds.

43.     Kopacz can't concentrate, and he constantly worries about his reduced income.

44.     Kopacz has not worked at any job since January 5, 2005.

12

## (5)   **Issues of Law**

A.   Plaintiff DRBA's Statement of Legal Issues

1.   DRBA did not have any obligation to make separate maintenance and cure payments to Kopacz in addition to the wages and disability payments he has received since January 5, 2005.

2.   Since an amount equal to his monthly living expenses was provided by others at no expense to Kopacz, DRBA was not required to make any further payments to Kopacz. Shaw v. Ohio River Co., 526 F.2d 193, 201 (3d Cir. 1975).

3.   Maintenance is designed to provide an injured seaman with the cost of lodging and food comparable in quality to that which he was entitled at sea. Barnes v. Andover Co., L.P., 900 F.2d 630, 634 (3rd Cir. 1990). As a so-called commuter seaman, who retired to his home each evening at the end of his shift, Kopacz was expected to pay for his food, lodging and other living expenses out of his wages. A recovery of the cost of those living expenses on top of the wages, sick leave, annual leave and disability benefits that he is already receiving would constitute a double recovery, and should not be awarded. *Id*. at 643 (discussed but not decided by Third Circuit).

4.   In any event, Social Security disability benefits should offset the DRBA's obligation to pay maintenance to a seaman. *See* Baum v. Transworld Drilling Co., 612 F. Supp. 1555 (W.D. La. 1985); *see also* Petition of RJF International Corp., (D.R.I. 2004) (but for Medicare Secondary Payor Act, receipt of Medicare benefits could possibly obviate cure obligation. Unlike Medicare, the government has no lien for disability payments.); Moran Towing & Transportation Co. v. Lombas, 58 F.3d 24, 27 (2d Cir. 1995) [medicare payments replace cure].

13

5.      Collateral source rule is inapplicable to maintenance and cure claims, which are not tort based. Shaw v. Ohio River Co., 526 F.2d 193 (3d Cir. 1975); Moran Towing & Transportation Co. v. Lombas, 58 F.3d 24, 27 (2d Cir. 1995).

6.      Punitive damages are not available for failure to pay maintenance and cure. Kopacz v. Delaware River & Bay Authority, 2005 A.M.C. 2481 (D. Del. 2005) (*appeal docketed* 06-3585); Jackson v. Delaware River & Bay Authority, 334 F. Supp. 2d 615 (D.N.J.), aff'd, 114 Fed. Appx. 511 (3d Cir. 2004), cert. denied, 125 S. Ct. 2970 (2005); In re J.A.R. Barge Lines, L.P., 307 F. Supp. 2d 668 (W.D. Pa. 2004). *See also* O'Connell v. Interocean Management Corp., 90 F.3d 82, 84 (3d Cir. 1996) and cases cited therein.

7.      In any event, the type of consequential damages sought by Kopacz for the DRBA's alleged failure to provide maintenance (i.e. stress due to his financial situation) are not legally compensable under the law of this Circuit. Smith v. Delaware Bay Launch Service, Inc, 842 F. Supp. 770 (D. Del. 1994), aff'd, 54 F.3d 770 (3d Cir. 1995). See also Bavaro v. Grand Victoria Casino, 2001 W.L. 289782 (N.D. Ill. Mar. 15, 2001).

8.      The DRBA has filed a motion in limine to preclude evidence of the facts alleged by Kopacz in his contested facts numbered 2-11 and 39-40.

B.      Defendant Kopacz' Statement of Legal Issues

1.      Kopacz will file a Trial Brief before the Pre-Trial Conference.

2.      A seaman, even one who was not furnished board and lodging while working, is entitled to the value of board and lodging (maintenance) while disabled if the disability began while he/she was subject to the call of duty. Barnes v. Andover Co., LP, 900 F.2d 630 (3rd Cir. 1990); Smith v. Delaware Bay Launch Service, Inc., 972 F. Supp. 836 (D. Del. 1997).

14

3.    DRBA is not entitled to a credit for the LTD payments made by Hartford.  Shaw v. Ohio River Co., 526 F. 2d 193 (3rd Cir. 1975).

4.    DRBA is not entitled to a credit for Social Security payments.  Vaughan v. Atkinson, 369 U.S. 527 (1962); Gypsum Carrier, Inc. v. Handelsman, 307 F. 2d 535 (9th Cir. 1962); Sampsell v. B & I Welding Services and Consultants, Inc., 638 So.2d 477 (La. App. 4thCir. 1994) writ den. 644 So.2d 397 (La. 1994) cert. den. 514 U.S. 1063 (1995); Kirk v. Allegheny Towing  Inc., 620 F. Supp. 458 (W.D. Pa. 1985).

5.    The cases permitting a credit against medical expenses (cure) are not relevant to DRBA's obligation to pay maintenance.  Moran Towing & Transportation Co. v. Lombas, 843 F. Supp. 885 (S.D.N.Y. 1994) affd. 58 F.3rd 24 (2nd Cir. 1995); Blige v. M/V GEECHEE GIRL, 180 F. Supp. 2d 1349 (S.D. La. 2001), Toulson v. Ampros Fisheries, 872 F. Supp. 271 (E.D. Va. 1995), Shaw v. Ohio River Co., 526 F. 2d 193 (3rd Cir. 1975).  Baum v. Transworld Drilling Co., 612 F. Supp. 1555 (W.D. La. 1985).

6.    DRBA is liable for prejudgment interest.  Deisler v. McCormack Aggregates Co., 54 F.3rd 1074 (3rd Cir. 1995).

7.    DRBA is liable for consequential damages.  Sims v. War Shipping Admin., 186 F.2d 972 (3rd Cir. 1951); Deisler v. McCormack Aggregates Co., 54 F.3rd 1074 (3rd Cir. 1995).

8.    DRBA is liable for attorneys' fees and costs.  Deisler v. McCormack Aggregates Co., 54 F.3rd 1074 (3rd Cir. 1995).

9.    DRBA may be liable for punitive damages.  Kopacz v. DRBA, C.A. No. 06-3585, submitted for disposition on July 13, 2007 and not yet decided by the Third Circuit.

10.    DRBA failed to join a necessary party.  Shields v. Barrow, 58 U.S. (17 How.) 130 (1855); Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102 (1968); Piper

Aircraft Corp. v. Reyno, 454 U.S. 235 (1981); Field v. Volkswagenwerk AG, 626 F.2d 293 (3rd Cir. 1980); Janney Montgomery Scott, Inc. v. Shepard Niles, 11 F.3d 399 (3rd Cir. 1993)

11.    DRBA is seeking an advisory opinion, so there is no case or controversy. Flast v. Cohen, 392 U.S. 83 (1968).

**(6)    Exhibits**

A.    Plaintiff DRBA's Exhibits

1.    Union Contract

2.    Hartford Records

3.    Social Security Records

4.    DRBA Payroll Records

5.    DRBA Personnel Records

6.    Records of Dr. Olivi

7.    Records of Dr. Montrose-Lopez

8.    Reports of Dr. Stephens

9.    Reports of Dr. Malumed

10.    Report of Dr. Schanno

11.    Kopacz Tax Records

12.    DRBA's Record of Payments to Kopacz/Medical Providers

13.    DRBA correspondence

14.    DRBA reserves the right to introduce any exhibit listed by the defendant, or to introduce other evidence in rebuttal.

B.    Defendant Kopacz' Exhibits

*Litigation*

16

1. Complaint

2. Interrogatories and Answers - First set

3. Interrogatories and Answers - Second set

*Accident Records*

1. Personal Injury Report

2. Kopacz' signed statement

3. Counsel's letter dated March 10, 2005

*Medical Records*

1. Dr. Montross-Lopez - Lewes Family Practice

2. Pace Orthopedics

3. Dr. Quinn

4. Dr. Olivi

5. Dr. Malumed

6. Dr. Stephens

*Corporate Records*

1. Relevant portions of Personnel Manual

2. Union Contract

3. Financial statements

4. Correspondence

*Hartford*

1. Group Benefit Plan

2. Hartford Claim File in its entirety

*Judicial Notice*

17

1. This Court may judicially notice the entire file in C.A. No. 04-911 (D. Del.) and C.A. No. 06-3585 (3rd Cir.)

*Other*

1. C.V. of Mike Walters

## (7) **Witnesses**

    A.    <u>Plaintiff DRBA's Witnesses</u>

        1.    Jan Kopacz

        2.    Bonnie Miller

        3.    Representatives of Hartford and SSA unless files admitted

        4.    DRBA reserves the right to call witnesses in rebuttal.

    B.    <u>Defendant Kopacz' Witnesses</u>

        1.    Jan Kopacz

        2.    Bonnie Miller

## (8) **Statement of Plaintiff's Case**

Plaintiff intends to prove that Kopacz was provided with his full wages ($9,906.67) for the first 90 days following his accident, and thereafter received annual and sick leave in the amount of $4,624.00 as well as an additional payment in the amount of $1,770.00 from the DRBA. He was deemed eligible for LTD effective April 5, 2005, and thereafter received $38,517.23 from LTD until such time as he was deemed eligible for SS disability. He has since received $ 24,144.00 from SSA through April 5, 2007, the date on which it is stipulated that he reached maximum medical improvement. Accordingly, Kopacz has received income in an amount that was more than sufficient to cover his living expenses, which are stipulated to be $2,190 per month. All of Kopacz' reasonable and necessary medical expenses have been paid by

18

the DRBA, and he has suffered no physical injury or worsening of his physical condition as a result of the DRBA's failure to make additional maintenance and cure payments to him.

## (9)   Statement of Defendant's Case

The obligation to pay maintenance is that of the shipowner, i.e. DRBA. DRBA is liable for maintenance from April 5, 2005 to April 5, 2007, a period of 24 months at $2,190 per month for a total of $52,560, and it is not entitled to a credit for payments made by Hartford under the long term disability policy.

DRBA's failure to satisfy its maintenance obligation, particularly after Hartford stopped making the long term disability payments, was unreasonable and without reasonable justification and this subjects DRBA to liability for counsel fees and expenses and may subject it to liability for punitive damages. The amount of counsel fees and expenses will be the subject of a petition to be filed after the Court decides the maintenance issue.

Punitive damages are an issue in C.A. No. 06-3585, which was submitted for disposition in the Third Circuit on July 13, 2007 and has not yet been decided. Kopacz asks the Court to hold its decision on this issue until the Third Circuit speaks. This decision will determine whether punitives are available, and, if so, the quantum of proof necessary to obtain them.

DRBA's failure to pay maintenance subjects it to liability for consequential damages and prejudgment interest both in amounts to be set by the Court.

The court cannot decide the issues involving Hartford because Hartford is not a party, so any judgment will not be binding on it. These issues include whether Hartford should have paid any long term disability payments from the beginning, Kopacz' liability for repayment of the Social Security payments and the like, and these are governed by ERISA. To the extent that DRBA claims the benefit of anything involving Hartford, it is seeking an advisory opinion from

this Court because Hartford is not a party. Furthermore, the Hartford policy entitles it to sue

Kopacz for any sums paid to Kopacz by Hartford in error, so Kopacz faces the prospect of

litigation by Hartford to recover all of the long term disability payments, and this Court can't

decide that issue either. DRBA's failure to join Hartford should impel this /court to dismiss

DRBA's Complaint and decide only Kopacz' Counterclaim.

DRBA is not entitled to a credit for Social Security payments, either directly against its

maintenance obligation or indirectly by having Kopacz repay the sums to Hartford. That is

inimical to all of the policy considerations underlying the maintenance obligation and the

shipowner's duty to pay maintenance concurrently with the need. All efforts by shipowners to

obtain credit for similar payments, such as workers compensation, have been defeated as being in

conflict with the underlying policies concerning maintenance.

**(10)    Amendment to Pleadings**

None

**(11)    Certification that Parties have engaged in
good faith effort to explore settlement.**

The parties have endeavored to resolve as many factual issues as possible by stipulation,

but it is not possible to resolve the remaining legal issues.

Defendant Kopacz contends that since the filing of the Complaint there have been no

settlement discussions of any kind, and DRBA's counsel informed the Court during the

telephone conference that no settlement was possible.

Plaintiff DRBA contends that it considered repaying the Hartford so that his full benefits

would continue if he would agree to give this money back to the DRBA if the Court found that

DRBA's position was correct. Kopacz' counsel said his client would obey any court order

20

compelling him to repay any sum to DRBA but he was unwilling to have his client make any

written agreement with DRBA concerning repayment

## (12) Other matters

The parties have stipulated to a number of factual issues, and the parties have agreed that

these stipulations may not be used in any way in the companion State Court action captioned at

C. A. No. 06C-09-083 JEB in the Superior Court of the State of Delaware in and for the New

Castle County.

Kopacz is making no claim in this lawsuit for the following:

1. Medical expenses (cure) since these will be claimed in the state court action.

2. Consequential damages for any dunning activities by creditors, impairment of

credit rating and increased interest upon refinancing.

3. Any aggravation or worsening of his back condition.

This is without prejudice to Kopacz' right to claim these in his state court action, which

he will do.

Dated: August 20, 2007

ROSENTHAL, MONHAIT & GODDESS, P.A.       SEITZ VAN OGTROP & GREEN P.A.


By: _/s/ Carmella P. Keener_             By: _/s/ Bernard A. Van Ogtrop_
Carmella P. Keener (DSBA No. 2810)       Bernard A. Van Ogtrop (DSBA No. 447)
919 N. Market Street, Suite 1401         222 Delaware Avenue, Suite 1500
Citizens Bank Center                     P.O. Box 68
P.O. Box 1070                            Wilmington, DE 19899
Wilmington, DE 19899-1070                (302) 888-7601
(302) 656-4433                           bvanogtrop@svglaw.com
ckeener@rmgglaw.com                      *Attorneys for Defendant,*
*Attorneys for Plaintiff,*               *Jan D. Kopacz*
*Delaware River and Bay Authority*

OF COUNSEL:

OF COUNSEL:

Mary Elisa Reeves, Esquire
DONNA ADELSBERGER
 & ASSOCIATES, P.C.
6 Royal Avenue
P.O. Box 530
Glenside, PA 19038-0530
(215) 576-8690

E. Alfred Smith, Esquire
E. ALFRED SMITH & ASSOCIATES
1333 Race Street, 2nd Floor
Philadelphia, PA 19107
(215) 569-8422

SO ORDERED this _____ day of _____, 2007.

_____
The Honorable Sue L. Robinson