IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DELAWARE RIVER & BAY
AUTHORITY

C. A. No. 07-00008-SLR

v.

JAN D. KOPACZ

## TRIAL BRIEF

SEITZ VAN OGTROP & GREEN, P.A.

/s/ Bernard A. Van Ogtrop
BERNARD A. VAN OGTROP, ESQ. (447)
Bvanogtrop@svglaw.co
222 Delaware Avenue Suite 1500
Wilmington, DE 19899
(302) 888-0600
Attorneys for defendant

Of counsel:

E. ALFRED SMITH & ASSOCIATES

/s/E. Alfred Smith
Counsel for Defendant

# **TABLE OF CONTENTS**

Page

Table of Contents................................................i

Table of Authorities............................................ii

Facts...........................................................1

Discussion......................................................3

1.  Maintenance in general.....................................3

2.  DRBA is not entitled to a credit for the long term disability payments made by the insurance company, Hartford, or for the Social Security payments or for the accumulated sick and annual leave payments...............4

3.  The cases permitting a credit against medical expenses (cure) are not relevant to DRBA's obligation to pay maintenance.....................................6

4.  DRBA is liable for prejudgment interest....................7

5.  DRBA is liable for consequential damages...................7

6.  DRBA is liable for attorney's fees and costs...............7

7.  DRBA may be liable for punitive damages....................8

8.  DRBA failed to join a necessary party......................8

9.  DRBA is seeking an advisory opinion on the Hartford policy, so there is no case or controversy before the court on DRBA's claim............9

Conclusion.....................................................10

# TABLE OF AUTHORITIES

Case Authority                                                                                                    Pages

*Aguilar v. Standard Oil Co.*, 318 U.S. 724 (1943). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Al-Zawkari v. American Steamship Co.*, 871 F.2d 585 (6th Cir. 1989). . . . . . . . . . . . . . . . . . . . . 4

*Barnes v. Andover Co., LP*, 900 F.2nd 630, 633-637 (3rd Cir. 1990). . . . . . . . . . . . . . . . . . . . . 3,4

*Baum v. Transworld Drilling Co.*, 612 F. Supp. 1555 (W.D. La. 1985). . . . . . . . . . . . . . . . . . . . . 6

*Blige v. M/V GEECHEE GIRL*, 180 F. Supp. 2d 1349 (S.D. La. 2001). . . . . . . . . . . . . . . . . . . . . 6

*Cox v. Dravo Corp.*, 517 F.2nd 620, 623-627 (3rd Cir. 1975) cert. den. 423 U.S. 1020 (1975). . . 3

*Deisler v. McCormack Aggregates Co.*, 54 F.3rd 1074 (3rd Cir. 1995). . . . . . . . . . . . . . . . . . . 3, 7

*Field v. Volkswagenwerk AG*, 626 F.2d 293 (3rd Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Flast v. Cohen*, 392 U.S. 83, 95-96 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Gardiner v. Sea-Land Services, Inc.*, 786 F. 2d 943 (9th Cir. 1986) cert. den. 479 U.S. 924 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Garrett v. Moore McCormack Co.*, 317 U. S. 239 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Gauthier v. Crosby Marine Service, Inc.*, 536 F. Supp. 269 (E.D. La. 1982) affirmed 752 F.2d 1085 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Goletz v. Prudential Ins. Co. of America*, 425 F. Supp. 2d 540 (D. Del. 2006). . . . . . . . . . . . . 9

*Gooden v. Texaco, Inc.*, 255 F. Supp. 343, (E.D. Pa. 1966) revd. on other grounds 328 F.2d 576, 582 (3rd Cir. 1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Gore v. Clearwater Shipping Corp.*, 256 F. Supp. 104, (E.D. Pa. 1966) aff'd. in part; revd. in part 378 F.2d 584, 588 (3rd Cir. 1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Gypsum Carrier, Inc. v. Handelsman*, 307 F. 2d 535 (9th Cir. 1962). . . . . . . . . . . . . . . . . . . . . . 5

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3rd Cir. 1993). . . . . . 9

*Kirk v. Allegheny Towing, Inc.*, 620 F. Supp. 458 (W.D. Pa. 1985). . . . . . . . . . . . . . . . . . . . . . . 5

*Macedo v. F/V Paul & Michelle*, 868 F.2d 519 (1st Cir. 1989)............................4

*Moran Towing & Transportation Co. v. Lombas*, 843 F. Supp. 885, 886-887 (S.D.N.Y. 1994) affirmed 58 F.3rd 24 (2nd Cir. 1995)...................................6

*Owens v. Conticarriers & Terminals, Inc.*, 591 F. Supp. 777 (W.D. Tenn. 1984).............6

*Piper Aircraft Corp. v. Reyno*, 454 U.S. 235 (1981).....................................9

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)................9

*Sampsell v. B & I Welding Services and Consultants*, 638 So.2d 477 (La. App. 4th Cir. 1994) *writ den.* 644 So.2d 397 (La. 1994) *cert. den.* 514 U.S. 1063 (1995).............5

*Shaw v. Ohio River Co.*, 526 F.2d 193 (3rd Cir. 1975)..........................4, 5, 6, 8

*Shields v. Barrow*, 58 U.S. (17 How.) 130, 139 (1855)...................................9

*Sims v. War Shipping Admin.*, 186 F.2d 972, 974 (3rd Cir. 1951).........................7

*Smith v. Delaware Bay Launch Service, Inc.*, 972 F. Supp. 836 (D. Del. 1997).............3

*Smith v. Delaware Bay Launch Service, Inc.*, 842 F. Supp. 770 (D. Del. 1994), aff'd 54 F.3d 770 (3d Cir. 1995)..............................................................7

*Thomas v. Humble Oil & Refining Co.*, 420 F.2d 793 (4th Cir. 1970)......................4

*Toulson v. Ampros Fisheries, Ind.*, 872 F. Supp. 271 (E.D. Va. 1995)....................6

*Vaughan v. Atkinson*, 369 U.S. 527 (1962).........................................3, 4, 5

*Vella v. Ford Motor Co.*, 421 U.S. 1 (1975)............................................5

Treatises

Robert Force and Martin J. Norris, *5 The Law of Seamen* (Thomson-West 2003) Chapter 26............................................................................3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DELAWARE RIVER & BAY
AUTHORITY

C. A. No. 07-00008-SLR

v.

JAN D. KOPACZ

## TRIAL BRIEF

### Facts

Kopacz was a seaman working aboard DRBA's ferry, M/V DELAWARE, on December 24, 2004. He suffered a herniated disc at L4-5 which was surgically repaired by Dr. Alessandro Olivi at the Johns Hopkins Hospital in Baltimore, Maryland on March 8, 2006.
He has not worked since January 5, 2005.

Pursuant to DRBA corporate policy Kopacz was paid his full wages for 90 days and then began receiving long term disability payments pursuant to an insurance policy obtained by DRBA as an employee benefit which covers all full-time permanent DRBA employees. The policy was underwritten by Hartford Life and Accident Insurance Company, which has not been named a party to this lawsuit.

Hartford approved Kopacz's application and began paying him monthly benefits as of April 5, 2005. The monthly benefit was $2192.11.

Kopacz made a claim for maintenance and submitted receipts to DRBA which showed his monthly board and lodging expenses to total $2190.94. The parties have stipulated that Kopacz's monthly expenses for board and lodging since January 5, 2005 have been $2190.

The Hartford policy entitles Hartford to deduct from its monthly payment the amount of any benefits that Kopacz is "eligible" for pursuant to the "Jones Act", "similar law", etc.

DRBA initially paid Kopacz $450 per month for "maintenance" and Kopacz duly reported this to Hartford. The letter explained what maintenance was and that DRBA should be paying $2190.94 per month. Hartford responded that it did not consider maintenance to be a benefit which it could credit against its monthly payments and it continued to pay the $2192.11 monthly.

By letter dated October 6, 2006 Social Security Administration advised Kopacz that it had approved him for total disability payments and was sending him a check for $17,142 for back payments and would thereafter send him a monthly check for $1167. This was duly reported to Hartford because Social Security payments are also items for which Hartford can take a credit.

By letter dated October 27, 2006 Hartford demanded that Kopacz repay it $16,607.92 which it said was the overpayment it made, and the letter said no further monthly benefits would be paid until that sum was repaid. It also said that future monthly benefits would be reduced by $1167 when they were reinstated.

Kopacz demanded that DRBA repay Hartford and agree to pay $1167 monthly hereafter, but DRBA has refused to do so. DRBA expressed a willingness to repay Hartford the $16,607.92 if Kopacz would agree to repay DRBA if a court said that DRBA was correct in its refusal to pay anything as maintenance. Kopacz's counsel said that Kopacz would obey any court order compelling him to repay DRBA but he would not permit his client to make a written agreement with DRBA. Kopacz has received no payments since October 27, 2006.

Kopacz has appealed the denial of benefits by Hartford, as permitted under the policy and required by ERISA. The appeal was recently decided but not completely. It upheld Hartford's demand for repayment and suspension but said nothing about Kopacz' contention that Hartford should not have paid anything since DRBA's maintenance obligation was something which Hartford could take as a credit, so Hartford's monthly payments were gifts since Hartford had full knowledge of the situation but chose to make the payments even though it was not legally obliged to do so.

The Hartford policy also contains a provision which entitles Hartford to recover overpayments, and these include overpayments resulting from any errors made by Hartford. Kopacz thus faces the prospect of a future suit by Hartford to recover all of its payments if it concludes that its decision to make the payments was an error since the DRBA maintenance obligation was almost equal to the monthly benefit.

DRBA has not paid one of Kopacz's medical providers, but Kopacz has agreed to make no claim in this lawsuit for unpaid medical expenses, so the suit is limited to a claim for unpaid maintenance and associated damages for the unreasonable nonpayment

.

2

**Discussion**

1. **Maintenance in general.**

Maintenance can be analogized to workers' compensation, although it is broader. It is a stipend paid by a shipowner-employer to a seaman who becomes disabled while in the service of a vessel, and it does not require an accident at work to trigger the entitlement. The obligation is created immediately upon the beginning of the disability; there is no waiting period. The stipend is the amount necessary to cover the seaman's board and lodging during his convalescence, and the obligation lasts until the seaman reaches maximum medical improvement or the condition becomes permanent and further treatment is only palliative but not curative.

Maintenance in general is discussed at length in *Barnes v. Andover Co., LP*, 900 F.2nd 630, 633-637 (3rd Cir. 1990) and its historical development is set forth in *Cox v. Dravo Corp.*, 517 F.2nd 620, 623-627 (3rd Cir. 1975) cert. den. 423 U.S. 1020 (1975). It was most recently summarized in this Circuit in *Deisler v. McCormack Aggregates Co.*, 54 F.3rd 1074 (3rd Cir. 1995). *See generally* Robert Force and Martin J. Norris, *5 The Law of Seamen* (Thomson-West 2003) Chapter 26. This Court is familiar with maintenance issues, including those which involve seamen who were not furnished board and lodging while at work. *Smith v. Delaware Bay Launch Service, Inc.*, 972 F. Supp. 836 (D. Del. 1997)

The law of maintenance is judge-made, and the courts have stressed that the right is not to be limited by artificial distinctions. Unreasonable delay in recognizing the right can lead to awards of consequential damages, prejudgment interest, counsel fees and perhaps punitive damages. *See Vaughan v. Atkinson*, 369 U.S. 527 (1962) and *Deisler, supra*. The clear impetus is to require shipowners to pay the maintenance without delay and to avoid litigation, including unwarranted declaratory judgment actions. Within this Circuit great leeway has been granted the seaman in filing suit, and the courts have stressed the need for getting the maintenance paid promptly and concurrently with the need. *See Gooden v. Texaco, Inc.*, 255 F. Supp. 343, (E.D. Pa. 1966) revd. on other grounds 328 F.2d 576, 582 (3rd Cir. 1967); *Gore v. Clearwater Shipping Corp.*, 256 F. Supp. 104, (E.D. Pa. 1966) aff'd. in part; revd. in part 378 F.2d 584, 588 (3rd Cir. 1967). Consistent with the rule observed in *Gore* to decide the maintenance issue quickly, Kopacz asks this Court to decide the maintenance issue as soon as possible, even if it means deferring a decision on the remaining issues as was done in *Gore*.

Since the maritime jurisdiction is exclusively federal, the federal courts have considered themselves the sole guardians of seamen's rights, and seamen are accorded a special status as "wards of the admiralty." Federal courts have therefore exercised great power to prevent overreaching of the seamen by shipowners, especially with releases not fairly arrived at. *See Garrett v. Moore McCormack Co.*, 317 U. S. 239 (1942).

3

Indeed, the supervisory power of the federal courts is so great that even a collective bargaining contract duly negotiated by a recognized bargaining agent for the seamen can be set aside if the court finds that the seamen's rights (in that case a daily maintenance rate of $8) have been unduly infringed. *See Barnes v. Andover Co., LLP, supra.* Other circuits have upheld such contracts even though the daily maintenance rate is shockingly small. *See Gardiner v. Sea-Land Services, Inc.*, 786 F. 2d 943 (9th Cir. 1986) cert. den. 479 U.S. 924 (1986); *Macedo v. F/V Paul & Michelle*, 868 F.2d 519 (1st Cir. 1989); *Al-Zawkari v. American Steamship Co.*, 871 F.2d 585 (6th Cir. 1989). The Third Circuit would probably strike down an attempt by DRBA to substitute the Hartford long term disability policy for its maintenance obligation because the policy contains so many qualifications, credits and other provisions that it is full of the "restrictive distinctions" that the Supreme Court has said should not be attached to the prompt payment of maintenance. *See Vaughan, supra* and *Aguilar v. Standard Oil Co.*, 318 U.S. 724 (1943). It would infringe the right to maintenance as much as the low daily rate in *Barnes*.

Of course, a duly negotiated collective bargaining agreement which grants generous, unrestricted maintenance payments pursuant to an agreed schedule is easily upheld. *See Thomas v. Humble Oil & Refining Co.*, 420 F. 2d 793 (4th Cir. 1970).

2.  **DRBA is not entitled to a credit for the long term disability payments made by the insurance company, Hartford, or for the Social Security payments or for the accumulated sick and annual leave payments.**

The obligation to pay maintenance is that of the shipowner, and it cannot be transferred to anyone else. It is perfectly acceptable for the shipowner to insure itself for the maintenance payments, but that insurance contract does not transfer the shipowner's obligation. If the insurance is a wage continuation policy which is apart from maintenance, the shipowner is not entitled to a credit for the payments made pursuant thereto.

In *Shaw v. Ohio River Co.*, 526 F.2d 193 (3rd Cir. 1975) the shipowner paid the entire premium for a policy which provided for weekly payments during periods of non-occupational disability, and the policy was purchased pursuant to a collective bargaining agreement. The agreement contained no provision specifying that payments from the insurance company would be in lieu of maintenance. Like the case before the court, the employer's premium obligation in Shaw appeared to be simply a part of the wage package. In fact, the policy before the court covers all permanent full-time DRBA employees, including all who are not covered by the collective bargaining agreement, so it wasn't even purchased because of the union. It was simply a wage benefit made available to all permanent full-time employees, seamen and non-seamen alike, and such a benefit had been made available to its employees by DRBA for more than 20 years before the union was even recognized.

In *Shaw* the Third Circuit held that the payments made by the insurance company were a form of deferred compensation, designed to replace lost wages, not to provide room and board and medical treatment, for they would be payable even if Shaw were ineligible for maintenance.

4

The same is true in this case, for Kopacz is entitled under the policy to receive the monthly payments until retirement age if he satisfies the policy's conditions, irrespective of when his entitlement to maintenance comes to an end. Kopacz would be entitled to these benefits if he became disabled while not subject to the call of duty, and the union contract is silent with respect to the long term disability policy.

Under *Shaw*, therefore, DRBA is liable for maintenance from April 4, 2005 until April 5, 2007, the date the parties have agreed that Kopacz reached maximum medical improvement, without any setoff for the payments made by Hartford heretofore. Kopacz recognizes that this is seemingly a double recovery, but the Hartford policy can be read to entitle Hartford to a credit for the maintenance payments made to Kopacz, and counsel pointed this out to Hartford when it first began making payments. Hartford then said it did not consider maintenance to be benefits to which it would be entitled to a credit and that then ended the matter. However, the Hartford policy also contains a provision which entitles Hartford to collect back any payments made by it pursuant to an error on its part, so Kopacz faces the prospect that Hartford will sue to recover the payments heretofore made on the basis that it made an error. Kopacz's only protection is for this Court to order DRBA to pay the full amount of the maintenance, without any setoff, since any judgment by this Court will have no effect on Hartford. As the Hartford claims file shows, there are many disputed issues.

There is no authority which would give DRBA a credit for the Social Security payments. In *Vaughan v. Atkinson, supra*, the Supreme Court refused to grant a setoff to the shipowner for sums which the seaman earned while working at a different job because the shipowner refused to pay him maintenance. In *Gypsum Carrier, Inc. v. Handelsman*, 307 F. 2d 535 (9th Cir. 1962) the court denied a setoff to the shipowner for payments made to the seaman pursuant to the California Unemployment Compensation Disability Act. The reasons were that the setoff would not further the purposes for which maintenance is paid, and granting a setoff might encourage shipowners to force seamen to pursue the remedy in the state system before seeking maintenance, which is contrary to the policy encouraging prompt payment of maintenance to the seaman. In *Sampsell v. B & I Welding Services and Consultants*, 638 So.2d 477 (La. App. 4th Cir. 1994) *writ den.* 644 So.2d 397 (La. 1994) *cert. den.* 514 U.S. 1063 (1995) the shipowner was denied a credit for workers' compensation payments mistakenly paid to the seaman when the shipowner should have been paying maintenance.

Apart from setoffs or credits, compelling a seaman to repay sums erroneously paid to him as maintenance is anathema to the policy of compelling prompt payment by the shipowner. This was suggested in *Vella v. Ford Motor Co.*, 421 U.S. 1 (1975) and requiring repayment was flatly denied in *Kirk v. Allegheny Towing, Inc.*, 620 F. Supp. 458 (W.D. Pa. 1985). There the court considered the matter at length and concluded that restitution was inimical to all of the policies underlying the obligation to pay maintenance. Furthermore there is something inherently cruel and unfair in forcing an individual making $40,000 per year to repay something paid to cover his board and lodging while he was unable to work to a commercial entity with a net worth of several hundred million dollars and earning millions of dollars in net profit each year, which is

5

DRBA's status. In fact, it is extremely cruel and heartless to cut off a seaman's board and lodging payments for several months, as DRBA has done, since Kopacz last received a monthly disability payment in October 2006.

DRBA also claims a credit for the accumulated sick and annual leave payments it made to Kopacz. It can cite no authority for this, and accumulated sick and annual leave is totally unrelated to maintenance.

### 3. The cases permitting a credit against medical expenses (cure) are not relevant to DRBA's obligation to pay maintenance.

A slightly different rationale underlies the considerations concerning setoffs for medical payments from sources other than the shipowner. There are several reasons for this, but the primary one is that the impetus is to get the seaman the treatment promptly without any real concern for the niceties of who will eventually pay for it. The collateral source rule clearly does not apply because fault does not underlay the maintenance obligation.

Another reason is that seamen, until 1981, were entitled to free care at the United States Public Health facilities, so the closing of those facilities put a burden on the shipping industry. The history of the Public Health facilities and who paid for them is well set forth in *Moran Towing & Transportation Co. v. Lombas*, 843 F. Supp. 885, 886-887 (S.D.N.Y. 1994) affirmed 58 F.3rd 24 (2nd Cir. 1995), which held that free surgical care under the Medicare program satisfies the shipowner's obligation to provide that element of cure. Judge Haight, the author of the District Court opinion, was a highly respected maritime practitioner before he became a federal district judge.

It has also been held that the payment of medical expenses by Medicaid satisfies the shipowner's obligation. *Blige v. M/V GEECHEE GIRL*, 180 F. Supp. 2d 1349 (S.D. La. 2001); *Toulson v. Ampros Fisheries, Ind.*, 872 F. Supp. 271 (E.D. Va. 1995). The Third Circuit has held that payments made by Blue Cross/Blue Shield may be setoff against the cure obligation where the premiums were paid exclusively by the employer. *Shaw v. Ohio River Co., supra*. *But see Owens v. Conticarriers & Terminals, Inc.*, 591 F. Supp. 777 (W.D. Tenn. 1984).

Where the medical coverage was paid for exclusively by the seaman some courts have held the employer is not entitled to a setoff. *Gauthier v. Crosby Marine Service, Inc.*, 536 F. Supp. 269 (E.D. La. 1982) affirmed 752 F.2d 1085 (5th Cir. 1985). Likewise, in *Baum v. Transworld Drilling Co.*, 612 F. Supp. 1555 (W.D. La. 1985) the shipowner was entitled to a credit for what was paid by the portion of the policy paid for by the shipowner but was denied a credit for what was paid by the portion of the policy whose premiums were paid by the seaman.

The foregoing cases are discussed to illustrate the differences which enable a shipowner to get a setoff for medical expenses but not maintenance. These are discussed in *Shaw, supra*,

6

which dealt with both issues. In DRBA's Pre-Trial Order Statement of the Legal Issues, DRBA cites cure cases to claim a credit against maintenance, and Kopacz contends this is inappropriate.

### 4. DRBA is liable for prejudgment interest.

In *Deisler v. McCormack Aggregates Co.*, 54 F. 3d 1074, 1087 (3rd Cir. 1995) the Third Circuit said that prejudgment interest has traditionally been a part of the compensation due a seaman-plaintiff and that it is merely an element of a seaman's complete compensation. In particular, "Interest must be allowed if plaintiff is to be truly made whole by defendant's breach of its duty to provide maintenance and cure." (*citing Vaughan v. Atkinson*)

### 5. DRBA is liable for consequential damages.

*Deisler, supra* at 1082-1087, held that consequential damages are recoverable for the failure to pay maintenance. The court found support for this in *Sims v. War Shipping Admin.*, 186 F.2d 972, 974 (3rd Cir. 1951) and said (in fn. 16 on p. 1083) that lost wages and pain and suffering damages are compensatory damages encompassed in consequential damages, but it did not define the remaining elements of consequential damages. It also did not define the "pain and suffering" to which it alluded. Kopacz contends that these include, among other things, the pain and suffering attendant upon having to forgo receiving board and lodging expenses and the worry, sleeplessness and upset that engenders. Otherwise the shipowner would face no damages for the agony it causes the seaman when it cuts off his maintenance, and that is inconsistent with the policy of compelling payment of maintenance concurrently with the need.

In the Pre-Trial Order, DRBA cited *Smith v. Delaware Bay Launch Service, Inc.*, 842 F. Supp. 770 (D. Del. 1994) aff'd. 54 F. 3d 770 (3rd Cir. 1995) as holding that the type of consequential damages being sought by Kopacz are "not legally compensable under the law of this circuit." *Smith* dealt with a seaman's right to maintenance and damages for aggravation of his injury, but it said nothing about other forms of compensatory damages for failure to pay maintenance. Accordingly, DRBA has miscited this case to the Court.

### 6. DRBA is liable for attorney's fees and costs.

*Deisler, supra* at 1087, held that a seaman may recover attorney's fees and costs if he or she proves the shipowner's bad faith or recalcitrance. Citing a Second Circuit opinion, the Court said that if the shipowner fails to make a prompt, good faith investigation of a seaman's claim or otherwise takes a "callous" or "recalcitrant" view of its obligations, the seaman may recover legal expenses in addition to maintenance and cure. It cited the rule in the disjunctive, so it is clear that a seaman need only prove one or the other to recover, but not both.

DRBA's callous attitude toward its maintenance obligation has been manifest since Hartford first stopped making its monthly payments and demanded that Kopacz repay it $16,607.92. DRBA's Complaint (Pars. 14 and 16) shows that it agrees with Hartford's position,

7

yet the *Shaw* decision shows clearly that DRBA has never been entitled to a credit for Hartford's payments. The *Shaw* decision was known to DRBA's counsel because *Shaw* was cited twice in DRBA's brief filed with the Third Circuit on December 4, 2006 in C.A. No. 06-3585. Hartford's demand was in its letter of October 27, 2006, and the discussions between counsel took place in November 2006, when DRBA's Third Circuit brief was being prepared. It is reasonable to infer that counsel, who studied the *Shaw* opinion when preparing her brief in November, advised DRBA of its holding, so the decision to refuse to pay anything and demand credit for the Hartford payments was made exclusively by DRBA in complete disregard of the controlling *Shaw* opinion. This is remarkable since DRBA, in addition to its litigation counsel, also had two very experienced maritime lawyers available to it for guidance if need be.

DRBA has continued its effort to claim credit in its Answers to Interrogatories, both in the first set and the second set, served on Kopacz at the end of July, and the position is set forth, although much more vaguely, in DRBA's portion of the Pre-Trial Order. In answer to an interrogatory which asked, "Has plaintiff paid defendant any maintenance? If the anser is "no", set forth the facts justifying the denial; who made the decision not to pay defendant his maintenance and when the decision was made." DRBA's answer is, "Defendant has received the equivalent of maintenance from the DRBA, the LTD carrier and/or SocialSecurity."

In the second set of interrogatories, interrogatory no. 5 asked, "Set forth the reasons why DRBA has refused to pay maintenance to Jan Kopacz  a. After Hartford began to pay his disability payments and  b. After Hartford stopped paying his disability payments." DRBA's answer to "a" was "The DRBA maintains that the disability payments by others reduce or eliminate DRBA's maintenance obligation. Moreover, the DRBA maintains that Kopacz has reached maximum medical improvement no later than February 12, 2007" and to "b" it was "See answer to interrogatory No. 5(a)."

DRBA's recalcitrance is undisputed because it still has not paid anything to Kopacz as maintenance since Hartford stopped its payments, and DRBA has taken no steps to have Hartford resume its monthly payments. In short, Kopacz had been without any maintenance payments since Hartford's letter of October 27, 2006.

7.     **DRBA may be liable for punitive damages.**

Ths issues of a shipowner's liability for punitive damages and what must be shown to justify such an award are before the Third Circuit in *Kopacz v. DRBA*, C. A. No. 06-3585, which was submitted for disposition, without argument, on July 13, 2007. Kopacz requests that this Court hold this issue in abeyance until the Third Circuit hands down its decision.

8.     **DRBA failed to join a necessary party.**

F. R. Civ. P. 19 identifies the parties needed for a just adjudication. When the Answer was filed, an appeal of Hartford's denial was pending. This was permitted under the policy and

8

required under ERISA before suit could be started. Accordingly, since suit was premature Hartford could not be joined, so it was an indispensable party. The appeal of that issue has been resolved and Hartford is undoubtedly amenable to suit within this jurisdiction, so it is a "necessary" party as to that issue. However, Hartford is still considering Kopacz's entitlement to benefits after the two years have elapsed, i.e. it has not yet determined whether Kopacz is disabled from any occupation. On this Social Security has found Kopacz totally disabled but Hartford probably will not. The Social Security determination, while not binding, is at least a factor to be taken into consideration. *See Goletz v. Prudential Ins. Co. of America*, 425 F. Supp. 2d 540 (D. Del. 2006). In short, on this issue the matter is still in the administrative stage and Hartford cannot be sued yet, so it is indispensable.

The leading case defining an indispensable party is *Shields v. Barrow*, 58 U.S. (17 How.) 130, 139 (1855) and the leading case describing the analytical process is *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)

Basically, a party is necessary or indispensable if complete relief can't be granted in its absence or if it claims an interest relating to the subject of the action and its absence leaves any of the remaining parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reasons of the claimed interest. F. R. Civ. P. 19   The term "complete relief" is to be read broadly. *See Piper Aircraft Corp. v. Reyno*, 454 U.S. 235 (1981) and partial judgments are to be avoided. *See Field v. Volkswagenwerk AG*, 626 F.2d 293 (3rd Cir. 1980) The rule is to be read in the disjunctive. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3rd Cir. 1993).

Kopacz has not researched this extensively because he should prevail quite easily on his Counterclaim, but it is clear that Hartford is a necessary party. It certainly has an interest in the interpretation of its policy, and it has demanded repayment of $16,607.92 before it will resume making monthly payments which, when resumed, may run for another 5-6 years depending on Kopacz's normal retirement age. Many of the issues tied up in these determinations are in dispute.  Since Hartford is not a party, it cannot be heard, and any judgment will not be enforceable against it. Furthermore, it may claim that its early decision that maintenance does not entitle it to a credit was an error and sue to recover all of the payments already made, so Kopacz faces the prospect of inconsistent obligations depending on the outcome of a Hartford lawsuit.

Kopacz would ordinarily demand that Hartford be made a party, but this is unnecessary since Kopacz should prevail on his Counterclaim.

### 9. **DRBA is seeking an advisory opinion on the Hartford policy, so there is no case or controversy before the court on DRBA's claim.**

The leading case on the history of the constitutional concept of "case or controversy" and the rule against advisory opinions is *Flast v. Cohen*, 392 U.S. 83, 95-96 (1968). Essentially it

9

holds that the judicial power is to be exercised to resolve actual, not imaginary, disputes. Here DRBA seeks to have this Court render an opinion on an insurance policy issued by a company which is not a party and which would not be bound by this Court's judgment, so it is asking this Court to advise Hartford of its obligations. This would clearly be an ineffective exercise of this Court's power since Hartford could ignore this Court's judgment with impunity.

### Conclusion

For the foregoing reasons Kopacz submits that the Court should enter judgment in his favor for the sum of the monthly maintenance payments of $2190 for each month from April 2005 to April 2007, a total of 24 months, or $52,560 plus prejudgment interest at a rate to be established by the Court; enter a finding that DRBA's refusal to pay the maintenance was unreasonable and without reasonable justification thus entitling Kopacz to attorney's fees and costs; enter judgment in favor of Kopacz for consequential damages in an amount to be set by the Court and await the decision of the Third Circuit before deciding the punitive damages issue and award counsel fees and expenses in an amount to be determined upon petition.

Respectfullly,

SEITZ VAN OGTROP & GREEN, P.A.

/s/ Bernard A. Van Ogtrop
BERNARD A. VAN OGTROP, ESQ. (447)
Bvanogtrop@svglaw.co
222 Delaware Avenue Suite 1500
Wilmington, DE 19899
(302) 888-0600
Attorneys for defendant

Of counsel:

E. Alfred Smith & Associates

/s/E. Alfred Smith
Counsel for Defendant

11

## CERTIFICATE OF SERVICE

I, Bernard A. Van Ogtrop ID#447, hereby certify that on the 22nd day of August, 2007, I electronically filed the following document with the Clerk of the Court using CM/ECF which will send notification of such filing to counsel of record:

Trial Brief

_____
/s/ Bernard A. Van Ogtrop (ID No.447)