IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| DELAWARE RIVER AND BAY AUTHORITY, | : <br> : <br> :     C.A. No. 07-0008-SLR |
|        Plaintiff | : <br> : |
|     v. | : <br> : |
| JAN D. KOPACZ, <br>        Defendant. | : <br> : <br> : |

**OPENING POST-TRIAL BRIEF OF
PLAINTIFF, DELAWARE RIVER AND BAY AUTHORITY**

ROSENTHAL, MONHAIT & GODDESS, P.A.
Carmella P. Keener (DSBA No. 2810)
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
ckeener@rmgglaw.com

OF COUNSEL:
Mary Elisa Reeves, Esquire
DONNA ADELSBERGER
& ASSOCIATES, P.C.
6 Royal Avenue, P.O. Box 530
Glenside, PA 19038-0530
(215) 576-8690

*Attorneys for Plaintiff,
Delaware River and Bay Authority*

Date Filed: November 21, 2007

# **TABLE OF CONTENTS**

NATURE AND STATE OF THE PROCEEDINGS ...............................................1

SUMMARY OF ARGUMENT ................................................................................1

STATEMENT OF FACTS ......................................................................................2

ARGUMENT .............................................................................................................4

    A.       Historical Perspective ......................................................................5

    B.       Long Term Disability Benefits .........................................................5

    C.       Social Security Benefits ..................................................................10

    D.       Declaratory Judgment ....................................................................13

    E.       The Hartford.....................................................................................13

    F.       Consequential Damages...................................................................14

    G.       Interest...............................................................................................18

    H.       Attorneys' Fees ...............................................................................19

    I.        Punitive Damages ...........................................................................20

CONCLUSION.......................................................................................................21

# TABLE OF AUTHORITIES

*Ballance v. Energy Transport. Corp.*,
  2002 A.M.C. 198 (S.D.N.Y. 2001)............................................................17

*Barnes v. Andover Co., L.P.*,
  900 F.2d 630 (3d Cir. 1990).........................................................5, 6, 9, 12

*Bavaro v. Grand Victoria Casino*,
  2001 WL 289782 (N.D. Ill. March 15, 2001)............................................17

*Baum v. Transworld Drilling Co.*,
  612 F. Supp. 1555 (D. La. 1985) ..............................................................10

*Blige v. M/V GEECHEE GIRL*,
  180 F. Supp. 2d 1349 (S.D. Ga. 2001)..................................................10, 11

*Carney v. United States*,
  368 F. Supp. 2d 439 (D. Md. 2005)...........................................................15

*Costa Crociere, S.p.A. v. Rose*,
  939 F. Supp. 1538 (S.D. Fla. 1996) .............................................................9

*Covert v. United States*,
  2003 WL 23305264 (E.D. Tex. Oct. 23, 2003) .........................................11

*Deisler v. McCormack Aggregates Co.*,
  54 F.3d 1074 (3d Cir. 1995).........................................................15, 17, 19

*In re Falcon Workover Co., Inc.*,
  1999 WL 243657 (E.D. La. April 21, 1999)...............................................11

*Gaspard v. Taylor Diving & Salvage Co., Inc.*,
  649 F.2d 372 (5th Cir. 1981), *cert. denied*, 455 U.S. 907 (1982) ..............20

*Gooden v. Sinclair*,
  378 F.2d 576 (3d Cir. 1967)....................................................................6, 7

*Gorum v. Ensco Offshore Co.*,
  2002 WL 31528460 (E.D. La. Nov. 14, 2002) ..........................................20

*Great Lakes Towing Co. v. Kornmeirer*,
  2003 WL 21105077 (N.D. Ohio May 2, 2003)...........................................11

*Grissom v. Seal Fleet, Inc.*,
  1997 WL 722959 (E.D. La. Nov. 18, 1997) ........................................11, 12

*Hall v. Noble Drilling (U.S.) Inc.*,
  242 F.3d 582 (5th Cir. 2001) ........................................................................6

*Huss v. King*,
  2001 U.S. Dist. Lexis 19262 (W.D. Mi. Oct. 14, 2001) ............................11

*J. Victor Ward v. Inland Marine Services, Inc.*,
  1987 A.M.C. 1282 (N.D. Fla. 1987)...........................................................19

*Kasprik v. United States*,
  87 F.3d 462 (11th Cir. 1996) ......................................................................15

*Kirk v. Allegh. Towing Inc.*,
  620 F. Supp. 458 (W.D. Pa. 1985)..............................................................13

*Kopacz v. Delaware River and Bay Authority,*
  2007 WL 2623605 (3d Cir. Sept. 12, 2007) ......................14, 17, 18, 19, 20

*Morales v. Garijak, Inc.*,
  829 F.2d 1355 (5th Cir. 1987) ..............................................................19, 20

*Moran Towing & Transportation Co. v. Lombas*,
  58 F.3d 24 (2d Cir. 1995).................................................................9, 11, 12

*Neville v. American Barge Line Co.*,
  182 F. Supp. 90 (3d Cir. 1959) ...................................................................15

*O'Connell v. Interocean Management Corp.*,
  90 F.3d 82 (3d Cir. 1996)............................................................................14

*In re Pelican Marine Partners*,
  1996 WL 665753 (E.D. La. Nov. 15, 1996) ..........................................11, 12

*In re RJF International Corp.*,
  332 F. Supp. 2d 458 (D.R.I. 2004)..............................................................11

*Roberts v. S.S. Argentina*,
  359 F.2d 430 (2d Cir. 1966)........................................................................19

*Rowan Companies, Inc. v. Griffin*,
  876 F.2d 26 (5th Cir. 1989) ........................................................................13

*Shaw v. Ohio River Co.*
526 F.2d 193 (3d Cir. 1975)....................................................8, 9, 10, 11, 12

*Sims v. United States War Shipping Admin.,*
186 F.2d 972 (3d Cir. 1951)......................................................................15

*Smith v. Delaware Bay Launch Service, Inc.,*
842 F. Supp. 770 (D. Del. 1994),
*aff'd,* 54 F.3d 770 (3d Cir. 1995)...................................................16, 17, 20

*Smith v. Delaware Bay Launch Service, Inc.,*
972 F. Supp. 836 (D. Del. 1997)...............................................5, 6, 8, 9, 12

*Stevens v. McGinnis, Inc.,*
1994 WL 1071681 (E.D. Ky. August 5, 1994), *aff'd,*
82 F.3d 1353 (6th Cir. 1996) .........................................................................5

*Sullivan v. Tropical Tuna, Inc.,*
963 F. Supp. 42 (D. Mass. 1997) ........................................................15, 19

*Torch, Inc. v. Theriot,*
727 F. Supp. 1048 (E.D. La. 1990)............................................................13

*Vaughan v. Atkinson,*
369 U.S. 527 (1962)....................................................................5, 6, 10, 19

*Whatley v. United States,*
1970 A.M.C. 1556 (S.D.N.Y. 1970).........................................................16

*Whitman v. Miles,*
387 F.3d 68 (1st Cir. 2004).........................................................................19

## OTHER AUTHORITIES

2 Martin J. Norris, *The Law of Seamen* §§ 26.3 to 26.8
(4th Ed. 1985 & Supp. 1994) .......................................................................5

2 Martin J. Norris, *The Law of Seamen,* §26:41 at 107 (4th Ed. 1985) .................16

## NATURE AND STAGE OF THE PROCEEDINGS

This case involves a claim for maintenance and cure brought by a seaman, Jan Kopacz ("Kopacz"), who suffered an on the job injury[1] while he was in the employ of a ferry owned by the Delaware River and Bay Authority ("DRBA"). Following the injury, he received sufficient money to pay his living expenses ("maintenance") from the DRBA, its long term disability carrier, and/or the Social Security Administration until such time as he reached maximum medical improvement. (P-14, Exhibit 1 hereto). All of his properly documented medical expenses have been paid (D.I. 28 at 37-38), and Kopacz makes no claim for cure. (D.I. 21 at 21). The DRBA simply seeks a declaratory judgment that it has fully met its maintenance and cure obligations to this seaman. The matter was tried to the Bench on September 24, 2007. This is Plaintiff's Post-Trial Brief.

## SUMMARY OF ARGUMENT

1. The purpose of maintenance is ensure that an injured seaman can meet his living expenses while recovering from an on the job injury.

2. The collateral source rule has no application to claims for maintenance, and if the seaman is provided room and board at no expense to the seaman, or is given the funds with which to pay his living expenses, the shipowner is relieved of the obligation to pay maintenance.

3. The seaman is not entitled to a double recovery.

4. The DRBA is entitled to a declaratory judgment that it has fully met all of its maintenance and cure obligations.

---

[1] The DRBA admits that Kopacz suffered an on the job injury for the limited purpose of this litigation only, and makes no such admission generally or for purposes of the state court litigation which arises out of the same incident and is currently pending.

5.  Even if this Court determines that maintenance is owing, the law of this Circuit does not permit an award of consequential damages, attorneys' fees or prejudgment interest under these circumstances.

## STATEMENT OF FACTS

The parties have stipulated to many of the relevant facts, and these stipulations were admitted into evidence as Plaintiff's Exhibit 15 (hereafter referenced as P-15, attached hereto as Exhibit 2). Briefly stated, Kopacz reported an on the job injury on December 24, 2004. (P-15, Stip. 2). Although he worked for a few days after the injury, he was eventually found to be unfit for duty as a seaman on the DRBA's ferries on or about January 5, 2005. (P-15, Stip. 3). The parties have stipulated that he reached maximum medical improvement on April 5, 2007. (*Id.*)

The parties have also stipulated that Kopacz' monthly living expenses were $2190. (P-15, Stip. 18). Following the accident, he received his full pay from the DRBA for ninety (90) days (P-15, Stip. 4), and thereafter became eligible for long term disability benefits through a policy provided to all permanent, full time employees for the purpose of providing "a continuing income should the employee's ability to earn a living be interrupted or terminated by a prolonged disability." (P-5 at 26; D.I. 28 at 32; P-15, Stips. 6, 7 and 10). The premiums for this disability policy are paid entirely by the DRBA. Kopacz also received other monies from the DRBA which included the value of his sick and annual leave. (P-13E; P-15, Stip. 5, 7; D.I. 28 at 36.). The amounts and source of each payment to Kopacz is detailed in P-14, and, on average, met or exceeded his monthly living expense or maintenance requirements.

2

With respect to permanent employees[2] who are injured on the job, it is the DRBA's policy to pay full wages for the first ninety (90) days of disability, and thereafter benefits would be paid by the long term disability carrier. (D.I. 28 at 33). Separate maintenance payments were not made, and no other seaman has complained or questioned this policy. (D.I. 28 at 47, 57). Kopacz accepted these payments in lieu of maintenance until a dispute arose with the long term disability carrier (hereinafter "the Hartford" or "LTD") over an offset for benefits which he began to receive from the Social Security Administration ("SSA"). (D.I. 28 at 14).

Pursuant to the LTD policy, Kopacz was required to apply for disability benefits through SSA. (D-4A at 13; D.I. 28 at 72). SSA approved his application in October of 2006, and sent him a check in the amount of $17,142, which represented his SSA benefits retroactive to July 5, 2005. (P-15, Stip. 12). Thereafter, Kopacz began to receive SSA benefits of $1167 monthly. (P-15, Stip. 17).

In accordance with the LTD policy, SSA benefits are an offset to benefits under the Hartford policy. (D-4H). Upon learning of the lump sum and monthly payments from SSA, the Hartford required that Kopacz repay the overpayment ($16,607.92[3]) which arose when SSA paid him retroactively. *Id.* The Hartford also advised Kopacz that, from then on, his monthly LTD benefit would be reduced by the benefit which he would now receive from SSA. *Id.*

**If Kopacz had simply taken the lump sum check from SSA and paid it over to the Hartford, he would have continued to receive the same amount of money**

---

[2]  This policy is only applicable to permanent, full time employees. Seasonal employees who are not eligible for LTD are paid maintenance. (D.I. 28 at 57-58).
[3]  The overpayment by the Hartford (($16,607.92) was slightly less than the SSA lump sum ($17,142) because the eligibility dates for each were different.

3

**($2,200) per month, however it would have been coming from two sources (LTD and SSA), rather than just one.** (D.I. 28 at 97-99). Instead, however, Kopacz insisted that the DRBA repay the $16,607.92 to the Hartford, and that the DRBA begin paying him the $1100 a month that Hartford was now deducting. (P-13G). Thus, this dispute was borne.

## ARGUMENT

Kopacz does not, and indeed can not, claim that his average monthly income has fallen below $2190 per month during the applicable time period. For three months, he received his full wages ($9,906.67) directly from the DRBA (P-15, Stip. 4), and then was paid his annual and sick leave ($4,624.93) while awaiting approval of his long term disability claim. (P-15, Stip. 5).[4] This income was later replaced by benefits from the Hartford, and then the SSA. (P-15, Stips. 6, 10, 12 and 17).

At no time prior to his receipt of Social Security benefits in October 2006, did Kopacz complain that the DRBA should pay maintenance in addition to his long term disability benefits. (D.I. 28 at 14, 24). In October 2006, Kopacz received a lump sum payment of $17,142.00 from Social Security which represented benefits retroactive to July of 2005. (P-15, Stip. 12).

Prior to the receipt of SSA benefits, Kopacz was receiving $2192 per month from the Hartford. (P-15, Stip. 10). If he had simply used the lump sum from SSA to repay the Hartford, he would have continued to receive a total of $2192 per month. (D-4(h);

---

[4] The DRBA also paid him $1,770.00 in "maintenance", which it erroneously believed it was required to do because of its contract with the Hartford. (D.I. 28 at 36; P-13E). The Hartford also paid him an additional $1,191.30 which it had deducted in error as a result of a similar misunderstanding. (P-15, Stip. 7).

4

D.I. 28 at 97-99). There would have been no reduction in Kopacz' income, it would simply come from two pockets instead of one.

## A.   **Historical Perspective**

To understand the issues presented by this case, it is important to review the history of maintenance and cure. The remedy was initially developed centuries ago for the benefit of so-called "blue water" seamen, who spent months or even years living onboard their ships, and was designed to prevent a callous shipowner from abandoning a sick or injured seaman in a foreign port with no means of obtaining medical treatment or transportation home. *See, generally, Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962); *Stevens v. McGinnis, Inc.*, 1994 WL 1071681 (E.D. Ky. August 5, 1994), *aff'd,* 82 F.3d 1353 (6th Cir. 1996)(*citing* 2 Martin J. Norris, *The Law of Seamen* §§ 26.3 to 26.8 (4th Ed. 1985 & Supp. 1994)). It harkens back to the days when seamen were first designated as "wards of the court," and were treated almost like children who were not in a position to protect themselves. *Vaughan*, 360 U.S. at 531-532; *Barnes v. Andover Co., L.P.,* 900 F.2d 630, 642 (3d Cir. 1990); *Smith v. Delaware Bay Launch Service, Inc.*, 972 F. Supp. 836, 847 (D. Del. 1997). With the advent of unions and stronger labor laws, however, the seaman is no longer considered to be friendless or at the mercy of the shipowner. *Barnes,* 900 F.2d at 636. Nonetheless, the courts continue to bend over backwards to protect the seaman's rights, and make sure that the seaman is able to meet his living expenses while he recovers from an on the job injury. *Id.*

## B.   **Long Term Disability Benefits**

If the seaman has not incurred the expense of food and lodging (i.e. he or she is living with relatives), the shipowner is **not** required to pay maintenance at all. *Vaughan*,

5

369 U.S. at 533. As the Fifth Circuit noted, "courts have treated maintenance not as a

payment owed from shipowner to seaman, but as an obligation of the shipowner to ensure

that the seaman can afford food and lodging." *Hall v. Noble Drilling (U.S.) Inc.*, 242

F.3d 582, 588 (5th Cir. 2001). The Third Circuit would likely agree, given the underlying

goal of "providing support to those who are ineligible for workman's compensation or

other means of support." *Barnes*, 900 F.2d at 642. Accordingly, if the seaman is

provided with the money to pay his living expenses, the shipowner should be relieved of

its obligation, especially if that money comes from an insurance policy funded by the

shipowner for the benefit of that seaman.

Kopacz argues that *Vaughan* supports the opposite conclusion. In *Vaughan*, the

Court did not allow the owner to offset wages earned by the seaman at a shoreside job

during his recuperation period, because to do so would encourage the shipowner to

withhold payments, thus forcing the seaman to work during his recovery. *Vaughan*, 369

U.S. at 532. Similarly, Third Circuit decisions on maintenance stand for the proposition

that the Court should insure that the seaman has the money to pay his living expenses as

they occur. *Barnes*, 900 F.2d at 643-644; *Gooden v. Sinclair*, 378 F.2d 576, 580 (3d Cir.

1967); *See also Smith*, 972 F. Supp. at 850. The courts have been cautioned against

making fine distinctions when the result is that the seaman is left without the funds to pay

his bills. *Vaughan*, 369 U.S. at 531-532.

This does not mean, however, that a court's basic sense of equity and justice must

be cast aside when evaluating a maintenance and cure case. In an appropriate case, the

court may fashion a result which avoids a double recovery by the seaman. *Gooden*, 378

F.2d at 580-581.

6

In *Gooden*, the Court would not allow a seaman to recover maintenance from one shipowner in addition to recovery of his wages, including the value of the board and lodging which form part of the wages, from another employer. *Id.* Why should Kopacz be permitted to recover an additional $2190 per month, when he was receiving that amount from an insurance policy purchased by his employer for the very purpose of providing him with a source of income if he should find himself unable to earn a living? (*See* P-5 at 26). Such a result would punish the shipowner for looking out for its employees' well being, and will frankly discourage the continued offering of such disability benefits by the DRBA and other employers in the future.

This is **not** a situation in which Kopacz found himself without the means to pay his household bills. Indeed, he received sufficient compensation to meet his expenses, from various sources, most of which can be traced directly back to his employer, the DRBA. Kopacz received wages, payout of sick and annual leave, and disability payments totaling $63,519[5] over a period of 27 months, which met or slightly exceeded his maintenance needs of $2190 per month. (*See* P-14). Thus, the DRBA has fully complied with the goal of maintenance, which is to insure that the seaman has "three meals a day and a bed in which to sleep during his treatment and convalescence." *Gooden*, 378 F.2d at 580. The seaman is not, however, entitled to demand that the shipowner double that recovery. *Id.* ("There is no basis in logic for assuming that he may ask for six meals a day or twin beds, however.") That is exactly what Kopacz is attempting to do here by demanding an additional $2190 per month over and above what he has already been paid.

---

[5] Kopacz actually received $80,126.97 during that time period, however, for the purposes of this argument we have deducted the $16,607 overpayment which is owed to the Hartford.

Kopacz suggests that Third Circuit's decision in *Shaw v. Ohio River Co.* requires

that the DRBA make separate payments to cover his household bills in addition to his

monthly disability benefits. 526 F.2d 193 (3d Cir. 1975). In that case, the Third Circuit

held that payments under the non-occupational disability policy could not be used to

offset the employer's maintenance obligation, because the Court characterized them as a

form of wages which the employer was required to pay by virtue of the union agreement.

*Id.* at 200.

Unlike the plan described in *Shaw*, the disability plan at issue here was voluntarily

provided by the DRBA for the purpose of "providing a continuing income should the

employee's ability to earn a living be interrupted or terminated by a prolonged

disability." (*See* P-5 at 26). It covers occupational as well as non-occupational

disabilities, and is not part of the wage package negotiated by the union. (D.I. 28 at 41-

42) It is a source of income which was not procured by the seaman, and was intended to

provide him with an income during his disability. (D.I. 28 at 30-32). The Third Circuit

specifically held that "the vessel owner has no obligation to provide maintenance and

cure if it is furnished by others at no expense to the seaman." *Shaw*, 526 F.2d at 201. In

*Shaw*, the court held that disability benefits could not be considered a substitute for

maintenance because, "at least under this collective bargaining agreement", they were

part of the wage package which the union negotiated. *Id.*

If no consideration is given to the benefits voluntarily bestowed on the seaman by

the shipowner, then a shipowner would be required to pay a seaman's living expenses

**even if** that owner chose to pay the seaman his full salary while recovering (as the DRBA

8

did for the first ninety days following his on the job injury.) This would result in a windfall to the seaman, and such an inequitable result cannot be countenanced.

Finally, the DRBA respectfully requests that this Court reconsider its ruling in *Smith v. Delaware Bay Launch Service, Inc.* with respect to the application of maintenance and cure benefits in the case of those seamen who do not live or eat onboard the vessels on which they serve. 972 F. Supp. at 849. Maintenance is an allowance designed to provide the seaman with compensation sufficient to cover the cost of food and lodging **similar in quality to that which he received on the ship**. *Barnes*, 900 F.2d at 630; *Smith*, 972 F. Supp. at 849; *Costa Crociere, S.p.A. v. Rose,* 939 F. Supp. 1538, 1549 (S.D. Fla. 1996). Kopacz was a so-called "commuter seaman"—a day worker who received neither food nor lodging from the vessel. *Shaw*, 526 F.2d at 197. The Third Circuit has left open the question of whether a commuter seaman, such as Kopacz, is even entitled to maintenance and cure in the first place. *Barnes*, 900 F.2d at 643. This Court confronted this very question ten years ago, and found that commuter seamen are indeed entitled to maintenance, in large part because of a perceived duty to ensure that the seaman has the funds to pay for his food and lodging while recuperating from an injury. *Smith*, 972 F. Supp. at 849. The DRBA would urge this Court to reconsider that ruling, especially in light of the fact that the Third Circuit acknowledged that there was "some logic in [the shipowner's] contention that allowing maintenance for shore-bound seaman constitutes a double recovery." *Barnes*, 900 F.2d at 642-643.

Even if the commuter seaman is entitled to maintenance as a general principle, this Court should still give consideration to the fact that, prior to the accident, Kopacz' living expenses were necessarily paid from his DRBA wages. (P-15, Stip. 25).

9

Therefore, the DRBA should not be required to pay maintenance in another form, if funds sufficient to cover his living expenses are provided to him by the DRBA or others by reason of the very disability which triggered the maintenance obligation in the first place. *Moran Towing & Transportation Co. v. Lombas*, 58 F.3d 24, 27 (2d Cir. 1995); *Baum v. Transworld Drilling Co.*, 612 F. Supp. 1555, 1556 (D. La. 1985) (*citing Vaughan and other cases*). To hold otherwise would result in an income while disabled which is actually greater than his income while gainfully employed.

## C.     Social Security Benefits

It is important to note that Kopacz did not apply for Social Security benefits of his own accord. In fact, he only made the application to SSA because he was **required** to do so by the Hartford. (D.I. 28 at 72; P-10 at 3-4). Kopacz reported to SSA's doctor that "… he is not looking for permanent disability. Indeed, he has been told that he must apply for Social Security disability by the insurance carrier who is paying his sick bills at this time, the reason being that if he is accepted for permanent disability, they would reduce the amount of money they are going to pay him." (P-10 at 3-4). It is therefore the DRBA's position that the receipt of SSA benefits should be treated no differently than the receipt of LTD benefits for the purposes of determining whether DRBA has met its maintenance obligation to Kopacz. To the extent that funds to meet Kopacz' monthly expenses are provided "by others", DRBA's obligation is met.

The collateral source rule has absolutely no application in maintenance and cure cases, as they involve the shipowner's liability without fault. *Shaw*, 526 F.2d at 201; *Blige v. M/V GEECHEE GIRL*, 180 F. Supp. 2d 1349, 1356 (S.D. Ga. 2001). The source of the "collateral" benefit is therefore irrelevant.

The Third Circuit has not directly addressed the issue of the impact of social
security benefits on a shipowner's maintenance obligation. In *Shaw*, however, the Court
held that the vessel owner need not pay maintenance if it is provided by others at no
expense to the seaman, and found that the employer need not pay medical bills which
were covered by Blue Cross. *Shaw*, 526 F.2d at 201. The Second Circuit held that once
a seaman becomes eligible for Medicare, his employer is no longer responsible for paying
his medical bills. *Moran Towing & Transportation Co. v. Lombas*, 58 F.3d 24, 27 (2d
Cir. 1995); S*ee also Blige*, 180 F Supp. 2d at 1355. Logic dictates that social security
disability benefits should also satisfy the shipowner's maintenance obligation.

At least two courts have reluctantly denied the set off of Medicare benefits
because of the Medicare Secondary Payer Act, which provides that Medicare benefits are
secondary to medical benefits provided by worker's compensation or other insurance. *In
re RJF International Corp.*, 332 F. Supp. 2d 458 (D.R.I. 2004); *In re Falcon Workover
Co., Inc.*, 1999 WL 243657 (E.D. La. April 21, 1999). Social Security disability benefits
are **not** subject to a similar restriction, and therefore they should be permitted to offset the
shipowner's maintenance obligation.

Research has revealed only a few district court cases[6] which specifically address
the interplay between Social Security benefits and maintenance. *Grissom v. Seal Fleet,
Inc.*, 1997 WL 722959 (E.D. La. Nov. 18, 1997); *In re Pelican Marine Partners*, 1996
WL 665753 (E.D. La. Nov. 15, 1996). In *Grissom*, the vessel owner sought summary
judgment on the seaman's maintenance and cure claims because that seaman was

---

[6]  Not included in this list are the cases which discuss the award of Social Security benefits as
determinative on the  issue of maximum medical improvement. *Compare Great Lakes Towing Co. v.
Kornmeirer*, 2003 WL 21105077 (N.D. Ohio May 2, 2003) with *Huss v. King*, 2001 U.S. Dist. Lexis 19262
(W.D. Mi. Oct. 14, 2001).

receiving Social Security and Medicare benefits. The seaman defended by arguing that he had made contributions to those accounts and also had to make co-payments for medical care. 1997 WL 722959 at *2. The Court denied the motion, holding that "genuine issues of material fact exist as to the extent, if any, to which defendants may set off plaintiff's Social Security and Medicare benefits from their obligation to pay maintenance and cure." *Id.* In doing so, the Court relied on the *Pelican Marine* case, which reached a similar conclusion. *Id.*

In *Covert v. United States*, the Court held that the federal government did not need to pay maintenance to its seaman who was receiving Social Security benefits. 2003 WL 23305264 (E.D. Tex. Oct. 23, 2003).

The DRBA urges the Court to adopt the reasoning of the Second Circuit in this regard, which does not require the shipowner to make payments which are covered by a government program, except to the extent that the seaman submits evidence of co-payments or premiums which he contributed to that program. *Moran Towing & Transportation Co.,* 58 F.3d at 27. It is significant that the *Moran* Court relies on the Third Circuit's pronouncement in *Shaw* that "a vessel owner has no obligation to provide maintenance and cure if it is furnished by others at no expense to the seaman." *Id.*

Again, the purpose of maintenance is to ensure that the seaman has the funds with which to pay his bills while he recovers from an on the job injury or illness. As long as those funds are provided by others at no expense to the seaman, the shipowner has no further obligation to pay maintenance. *Barnes; Shaw; Smith*.

**D.    Declaratory Judgment**

In light of the fact that the wrongful failure to pay maintenance and cure can result in the imposition of consequential damages and attorneys' fees, the shipowner who contests its liability to pay maintenance or cure in a particular situation has the option of filing a declaratory judgment action to determine the scope of his obligation. *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26 (5th Cir. 1989); *Torch, Inc. v. Theriot*, 727 F. Supp. 1048 (E.D. La. 1990). If the shipowner simply pays the maintenance or cure under protest, he runs the risk of being found a volunteer who is unable to recoup those payments from the seaman if his legal position is ultimately upheld. *See, e.g.*, *Kirk v. Allegh. Towing Inc.*, 620 F. Supp. 458 (W.D. Pa. 1985)(holding that there was no claim for restitution from the seaman personally of maintenance and cure payments made under a mistake of law). On the other hand, if he refuses to pay maintenance without filing a declaratory judgment action, he may find himself liable for consequential damages and attorneys' fees if the Court rejects his legal position and finds that his conduct warrants the imposition of those damages. It is for these reasons that the Courts have held that a declaratory judgment action is a proper vehicle for determining the rights and obligations of both parties in a maintenance and cure case.

**E.    The Hartford**

Kopacz argues that this case cannot be decided unless the Hartford is made a party to the dispute. In light of the fact that Kopacz chose not to join the Hartford, the DRBA maintains that he has waived this argument.

In any event, **this** dispute is between Kopacz and the DRBA. The ongoing dispute between Kopacz and the Hartford concerns his continued entitlement to benefits

13

after two years, when the policy requires that he be disabled from any occupation, rather than his own occupation. This dispute concerns a time period subsequent to the two year benchmark, which also happens to be the date on which he reached maximum medical improvement. Thus, the Hartford/Kopacz dispute is irrelevant to the issues before this court.

Kopacz argues that the Hartford might, at some unknown point in the future, decide to seek repayment of the undisputed payments which it has already made to Kopacz. (D.I. 28 at 115-116). The problem with this argument is the fact that the Hartford has already acknowledged that maintenance is **not** a set off to the disability benefits payable under the policy. (See D-4D). Kopacz' income has not, in fact, fallen below his maintenance needs during the relevant time period, and this argument is therefore specious and speculative.

## F.    Consequential Damages

Even if this Court finds that Kopacz is due additional maintenance payments from the DRBA, consequential damages cannot be awarded unless the Court determines that the DRBA's failure to pay the additional amounts was unreasonable. *Kopacz v. Delaware River and Bay Authority,* 2007 WL 2623605 (3d Cir. Sept. 12, 2007) (hereinafter "*Kopacz I*"); *O'Connell v. Interocean Management Corp.*, 90 F.3d 82, 84 (3d Cir. 1996). In other words, consequential damages are not available if the DRBA has offered a reasonable justification for withholding the payment. *Id.*

The DRBA reasonably believed that Kopacz had been provided with sufficient income to meet his living expenses through the payment of wages, leave and disability benefits. (D.I. 28 at 33-35). The DRBA treated Kopacz and all other seamen injured on

14

the job equally and fairly, and insured that they were provided with the funds necessary to meet their living expenses. No other injured seaman has complained that he was entitled to receive additional funds beyond the generous benefits already provided by the DRBA.

Moreover, the type of damages sought by Kopacz are not legally compensable, even for an unreasonable failure to pay maintenance and cure. Kopacz seeks compensation for the stress that he allegedly suffered as a result of the financial pressures brought on by the decreased income as a result of the DRBA's failure to pay.[7] Irrespective of factual disputes as to the reason for Kopacz' financial woes, it is DRBA's position that the law simply does not permit recovery for these types of damages.

The only damages recoverable for an unreasonable failure to pay are those which compensate a seaman "to the extent that the delay in receipt of his maintenance and cure exacerbated [plaintiff's] injury or extended his pain and suffering." *Carney v. United States*, 368 F. Supp. 2d 439, 450 (D. Md. 2005) (*citing Kasprik v. United States*, 87 F.3d 462, 466 n. 3 (11th Cir. 1996)); *Deisler v. McCormack Aggregates Co.,* 54 F.3d 1074, 1083 (3d Cir. 1995); *Sims v. United States War Shipping Admin.*,186 F.2d 972, 974 (3d Cir. 1951); *See also Neville v. American Barge Line Co.*, 182 F. Supp. 90 (3d Cir. 1959) (recognizing that a shipowner would be liable for consequential damages for failure to pay maintenance and cure where this led to the seaman's financial inability to obtain medical treatment causing a prolonged illness); *Sullivan v. Tropical Tuna, Inc.*, 963 F.

---

[7] This argument ignores the fact that the monies received from DRBA for the first 90 days and the payments by SSA and the Hartford thereafter exceeded the most generous estimate of his monthly living expenses, and in fact approximated his after tax income from the DRBA while he was working. Moreover, the DRBA disputes the claim that any of Kopacz' financial woes were attributable to any failure to pay by the DRBA following the incident of 12/24/04. His own testimony about his failure to repay the Hartford, purchase of an airplane and ownership of several homes belies his claims of poverty. (D.I. 28 at 73, 82-89).

15

Supp. 42, 46 (D. Mass. 1997)(allowing recovery for prolonged physical pain and

suffering caused by delay in providing medical treatment)(collecting cases); *Whatley v.*

*United States*, 1970 A.M.C. 1556, 1568 (S.D.N.Y. 1970)(denying damages for failure to

pay maintenance and cure as there was no evidence that plaintiff's condition was

aggravated or prolonged by the failure to pay maintenance and cure); Norris, *The Law of*

*Seamen*, §26:41 at 107 (4th Ed. 1985).

The District Court's opinion in *Smith v. Delaware Bay Launch Service, Inc.* is

directly on point. 842 F. Supp. 770 (D. Del. 1994), *aff'd*, 54 F.3d 770 (3d Cir. 1995). In

that case, the jury found in favor of the shipowner on the negligence and unseaworthiness

claims, but awarded compensatory damages to the plaintiff for the shipowner's

unreasonable failure to pay maintenance and cure. *Id.* The defendant filed a post-trial

motion seeking judgment as a matter of law, because there was no evidence in the record

to support a finding that the seaman's injuries were aggravated as a result of the failure to

pay. *Id.* at 775. Recognizing that recovery is only permitted when the failure to pay

aggravates the seaman's condition, the Court overturned the jury's verdict of

compensatory damages because the seaman procured his own maintenance and cure and

there was no evidence of inadequate treatment or a worsening of his condition. 842 F.

Supp. at 776.

Plaintiff's entire claim for compensatory damages[8] revolves around his distress

over his reduced income. In a similar case, a seaman was denied the right to seek

compensation for emotional distress and suffering that allegedly resulted from anxiety

about how to pay for mounting medical costs and receipt of health care provider

---

[8] In the Joint Pretrial Order, Kopacz stipulated that he is making no claim for medical expenses (cure) in
this lawsuit." (D.I. 21 at 21).

16

collection letters. *Bavaro v. Grand Victoria Casino*, 2001 WL 289782 (N.D. Ill. March

15, 2001). The Court held that Bavaro's recovery under the Jones Act was limited to

damages caused by aggravation or extension of a physical injury because the Jones Act

does not allow damages for emotional distress or similar injuries unless they are related

to a physical injury or threat of physical harm.[9] *Id.* The claim for worrying about

finances was therefore rejected as a matter of law. *Id.*

    This reasoning was likewise adopted by the Third Circuit in affirming *Smith,*

which held that compensatory damages for an unreasonable failure to pay maintenance

and cure were limited to traditional tort damages. 842 F. Supp. at 775; *See also, Kopacz*

*I.* As previously discussed, maritime tort damages under the Jones Act simply do not

encompass the type of emotional and financial damages sought by the plaintiff in this

case.[10]

    In the absence of proof that the failure to pay maintenance and cure prolonged or

aggravated the physical injury, there can be no award of compensatory damages. *Smith,*

842 F. Supp. at 775-776. "Thus, as a matter of law, there can be no injury or aggravation

from failure to pay maintenance and cure if the plaintiff was able to receive adequate

food, lodging and medical treatment." *Id.* at 776.

    In response to this argument, Kopacz attempted to create a physical manifestation

for the stress by claiming that he experienced increased episodes of insomnia and high

---

[9]  For a detailed explanation of the limitations on seeking recovery for emotional distress in a Jones Act case, see *Ballance v. Energy Transport. Corp.*, 2002 A.M.C. 198 (S.D.N.Y. 2001).

[10]  The *Deisler* case upon which Kopacz relied below is not inapposite. That case recognized that a seaman could recover consequential damages for a **wrongful** failure to pay maintenance and cure, which is an actionable tort in and of itself. Depending on the circumstances, consequential damages may therefore be available for both a Jones Act claim and a general maritime law claim seeking damages for a failure to provide maintenance and cure. *Deisler* did not address the recovery of emotional distress damages as an element of consequential damages, and therefore is not applicable to this argument.

17

blood pressure[11] as a result of the DRBA's failure to pay. This attempt must be rejected

in light of the fact that Kopacz has suffered from both of these conditions since long

before the 2004 accident. (See D.I. 28 at 78-81; P-7, 75, 81). Moreover, Kopacz did not

introduce any competent medical evidence for these claims despite the fact that he

retained a medical expert in this litigation. Not only did this expert not support these

claims, but he specifically said that Kopacz' high blood pressure was not related to this

accident. (P-8 at 3).

Finally, Kopacz was never deprived of the funds to meet his monthly expenses.

Even after deducting the $16,607 which he owes the Hartford, he still had sufficient

income to meet his maintenance requirements. (P-14). In addition, he has had the use of

the $17,142 which he received from SSA, but has refused to repay to the Hartford. (P-15,

Stip. 14; D.I. 28 at 72-73). Thus, even if the DRBA is required by this Court to pay

additional maintenance to Kopacz, his income to date has never fallen below the

stipulated monthly maintenance amount, and thus he has suffered no damages.

## G.    Interest

The award of prejudgment interest is discretionary. *Kopacz I*, 2007 WL 2623605

at *2. In a case involving a claim by Kopacz against the DRBA for maintenance and

cure in connection with an earlier injury, the Third Circuit confirmed that no prejudgment

interest could be awarded if such an award would be punitive, rather than compensatory.

*Id.* In that case, the Court found that such an award would be punitive if the seaman was

in fact paid benefits under the DRBA's policy (i.e. full wages for ninety days (90)

---

[11]    Although he also mentioned that his back hurt as a result of the stress (D.I. 28 at 74-75), Kopacz
stipulated in the Joint Pretrial Order that he was making no claim for "any aggravation or worsening of his
back condition. (D.I. 21 at 21).

followed by sixty (60) percent of those wages thereafter). *Id.* Therefore, interest should not be awarded here, even if the Court finds that additional maintenance is owing.

## H.    Attorneys' Fees

The Third Circuit standard for an award of counsel fees has not been met. In order for a ship owner to be liable for attorneys' fees and costs in this circuit, it must have displayed "bad faith" or "recalcitrance" in refusing to pay maintenance and cure. *Kopacz I*, 2007 WL 2623605 at \*2; S*ee also Deisler v. McCormack Aggregates Co., supra* (holding that attorneys' fees and costs differ from interest, lost wages and damages for pain and suffering because attorneys' fees and costs cannot be recovered unless plaintiff can first establish defendant's bad faith or recalcitrance); *Accord Roberts v. S.S. Argentina,* 359 F.2d 430 (2d Cir. 1966). The Supreme Court has also recognized that a seaman may recover legal expenses on top of maintenance and cure only when a shipowner takes a callous or recalcitrant view of its obligations. *Vaughan v. Atkinson*, 369 U.S. 527, 530-31 (1962). In *Vaughan*, the facts showed that the shipowner was callous, recalcitrant, willful and persistent.

In addition to the callousness and recalcitrant terminology, some courts require willful or arbitrary behavior on the part of a shipowner before awarding attorneys' fees. *Whitman v. Miles*, 387 F.3d 68 (1st Cir. 2004); *Sullivan v. Tropical Tuna, Inc.*, 963 F. Supp. 42 (D. Mass. 1997); *J. Victor Ward v. Inland Marine Services, Inc.*, 1987 A.M.C. 1282 (N.D. Fla. 1987).

In awarding damages in maintenance and cure actions, a layered approach is typically followed, as outlined in *Morales v. Garijak, Inc.*, 829 F.2d 1355 (5th Cir. 1987) (vacating an award of attorneys' fees because there was no evidence that the failure to

19

pay maintenance and cure was so unreasonable as to be a basis for fees). If the shipowner unreasonably fails to pay maintenance and cure, the shipowner is liable not only for maintenance and cure, but also for compensatory damages. However, if the shipowner in failing to pay maintenance and cure has not only been unreasonable, but has been more egregiously at fault, it may be liable for attorneys' fees. This higher degree of fault has been described as callous and recalcitrant, arbitrary and capricious or willful, callous and persistent. *Morales*, 829 F.2d at 1358; *See also Gaspard v. Taylor Diving & Salvage Co., Inc.*, 649 F.2d 372 (5th Cir. 1981), *cert. denied*, 455 U.S. 907 (1982); *Gorum v. Ensco Offshore Co.*, 2002 WL 31528460 (E.D. La. Nov. 14, 2002).

Likewise, this Court in *Smith v. Delaware Bay Launch Service, Inc.*, 842 F. Supp. 770 (D. Del. 1994), *aff'd*, 54 F.3d 770 (3d Cir. 1995), recognized that where a shipowner unreasonably rejects a maintenance and cure claim, the proper recovery is to pay the maintenance and cure due and also compensatory damages for the aggravation of the seaman's condition caused by the failure to pay.

The burden of showing such behavior is on the seaman. *Kopacz I.* There is no evidence of record that DRBA acted unreasonably with respect to this claim, much less willfully, recalcitrantly or callously. Therefore, neither compensatory damages nor attorneys' fees should be awarded.

## I.    **Punitive Damages**

Kopacz has advised that he will withdraw this claim.

20

## CONCLUSION

If the DRBA did not offer such generous benefits to its employees, Kopacz would

have been paid maintenance in the amount of $2190 per month directly by the DRBA.

By his own admission, he would not have applied for Social Security, and this dispute

would not have arisen.

If Kopacz' position is accepted by this Court, it will result in a double recovery by

him, and will discourage the DRBA and other employers from offering these benefits in

the future.

Equity and justice demand that this Court enter a declaratory judgment that

DRBA has fully met its maintenance and cure obligations to Kopacz.

Dated: November 21, 2007

Respectfully submitted,

OF COUNSEL:

ROSENTHAL, MONHAIT & GODDESS, P.A.

Mary Elisa Reeves, Esquire
DONNA ADELSBERGER
  & ASSOCIATES, P.C.
6 Royal Avenue, P.O. Box 530
Glenside, PA 19038-0530
(215) 576-8690

By:*/s/ Carmella P. Keener*
    Carmella P. Keener (DSBA No. 2810)
    919 N. Market Street, Suite 1401
    P.O. Box 1070
    Wilmington, DE 19899-1070
    (302) 656-4433
    ckeener@rmgglaw.com
    *Attorneys for Plaintiff,*
    *Delaware River and Bay Authority*

## CERTIFICATE OF SERVICE

I, Carmella P. Keener, hereby certify that on November 21, 2007, I electronically filed

with the Clerk of Court **OPENING POST-TRIAL BRIEF OF PLAINTIFF, DELAWARE**

**RIVER AND BAY AUTHORITY** using CM/ECF which will send notification of such filing to

the following:

| | |
|---|---|
| Bernard A. Van Ogtrop, Esquire | E. Alfred Smith, Esquire |
| Seitz, Van Ogtrop & Green, P.A. | E. Alfred Smith & Associates |
| 222 Delaware Avenue, Suite 1500 | 1333 Race Street, 2nd Floor |
| P.O. Box 68 | Philadelphia, PA 19107 |
| Wilmington, DE 19899 | |

and also by electronic mail upon:

E. Alfred Smith, Esquire
smithsealaw1@verizon.net

/s/ *Carmella P. Keener*
Carmella P. Keener (DSBA No. 2810)
Rosenthal, Monhait & Goddess, P.A.
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
ckeener@rmgglaw.com
  Attorneys for Plaintiff
  Delaware River and Bay Authority

# Exhibit 1

| SOURCE | DATE RANGE | # MONTHS | AMOUNT (monthly) | TOTAL | REFERENCE |
|---|---|---|---|---|---|
| **Maintenance Claimed** | **1/5/05- 4/5/07** | **27** | **$2190** | **$59,130.00** | **Stipulation #18** |
| DRBA Wages | 1/5/05- 4/5/07 | 3 | | $9,906.67 | Stipulation #4 |
| Sick and annual leave | 4/05 thru 5/05 | 2 | | $4,624 | Stipulation #5 |
| DRBA payment | | | $450 | $1,770.00 | Miller Testimony |
| Hartford LTD Lump sum | 4/5/05-7/5/05 | 3 | | $ 4,612.00 | Stipulation #6 |
| Hartford LTD monthly | 7/5/07-9/5/06 | 26 | | $32,712.00 | Stipulation #10 |
| Hartford LTD (reimbursement for underpayment) | | | | $ 1,191.30 | Stipulation #7 |
| SSA Lump Sum | 7/5/05-10/5/06 | 14 | | $17,142.00 | Stipulation #12 |
| SSA Monthly | 10/06-4/07 | 7 | $1167 | $8,169.00 | Stipulation #17 |
| **TOTAL** | | | | $80,126.97 | TOTAL |
| Less amt owed LTD | | | | -16,607 | |
| **GRAND TOTAL** | | | | $63,519.05 | PAID |



PLAINTIFF'S EXHIBIT
P- 14
ALL-STATE LEGAL®

# Exhibit 2

**❷ IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DELAWARE RIVER AND BAY
AUTHORITY                    :        Civil Action
                             :
            Plaintiff        :
    v.                       :
                             :
JAN D. KOPACZ                :        No. 07-0008 (SLR)
                             :

**STIPULATED FACTS**

1.    From January 24, 2001, Jan Kopacz was employed as a full time, permanent
      deckhand on board the DRBA's ferries.

2.    Jan Kopacz reported an on the job injury on December 24, 2004.

3.    According to DRBA's records, Kopacz worked on December 29, 30 and 31. He
      called in sick on January 3, and then worked on January 4, 5 and part of January 6,
      2005 on which date he was directed to see a doctor at Pace Orthopedics for a
      determination of his fitness for duty. For timekeeping purposes, he was declared not
      fit for duty retroactive to January 5, 2005. Although he continues to be not fit for
      duty as a seaman on DRBA ferries, he reached maximum medical improvement on
      April 5, 2007.

4.    Jan Kopacz received 100% of his weekly wage ($9,906.67) from January 5, 2005
      through April 5, 2005. It was DRBA's policy to pay seamen their full wages for the
      first 90 days following an on the job injury which rendered the seaman unable to
      perform his duties.

5.    As there was a delay in processing his long term disability benefits, the DRBA paid
      Kopacz the sum of $4624.93, which represented the value of his accumulated sick and
      annual leave.

6.    In June 2005, Jan Kopacz received a lump sum payment from the Hartford Insurance
      Company in the amount of $4,612.01, representing a payment of disability benefits
      retroactive to April 5, 2005, once his long term disability (LTD) claim was approved.

7.    In July 2005, Jan Kopacz received an additional check for $1191.30, which
      represented an underpayment by Hartford in his initial check.



8.      The insurance company which provided the long term disability coverage to all of
        DRBA's full-time permanent employees before Hartford was Pennsylvania
        Manufacturer's Association (PMA).

9.      Under the prior policy, PMA required that DRBA pay its seaman "maintenance
        wages" in the amount of $450 per month, which amount was deducted from the LTD
        benefit paid to the seaman.

10.     According to Hartford's records, , Jan Kopacz received LTD benefits from July 2005
        though October 2006 in the amount of $2,192.11 on a monthly basis, for a total of
        $32,713.95 before taxes.

11.     By letter dated October 6, 2006, Jan Kopacz was notified by the Social Security
        Administration ("SSA") that he was eligible for disability benefits retroactive to July
        2005.

12.     On or about October 12, 2006, Jan Kopacz received a lump sum payment of
        $17,142.00 from SSA, representing the benefit retroactive to July 5, 2005.

13.     As set forth in their letter of October 27, 2006, the LTD carrier demanded that he
        reimburse $16,607.92 which had been overpaid to him in light of the retroactive SSA
        benefit paid.

14.     Jan Kopacz refused to repay this amount to LTD, and his LTD benefits were
        suspended as a result. He has not received any further LTD benefits to this day.

15.     During discussions between counsel, Kopacz sought to have DRBA repay the sum
        sought by Hartford, which led to the filing of this declaratory judgment action by the
        DRBA so that its rights and obligations could be determined by this Court.

16.     During this time, DRBA's counsel attempted to negotiate a compromise whereby
        DRBA would consider repaying the amount, as long as Kopacz agreed to reimburse
        the DRBA if this court concluded that DRBA's position was correct. Counsel for
        Kopacz rejected this approach, and to date no repayment to the Hartford has been
        made by either party. Kopacz' counsel said his client would obey any court order
        compelling him to repay any sum to DRBA but he was unwilling to have his client
        make any written agreement with DRBA concerning repayment

17.     Since October 2006, Kopacz has been receiving monthly benefits of $1167.00 from
        SSA.

18.     Jan Kopacz' monthly living expenses from January 5, 2005 through April 5, 2007
        totaled $2190.00.

19.     As of April 5, 2007, Jan Kopacz had reached maximum medical improvement with
        respect to any injury sustained on December 24, 2004.

20.     Jan Kopacz has not been fit to return to duty as a seaman on DRBA's ferries since January 5, 2005.

21.     Jan Kopacz has not been denied any medical treatment following the December 24, 2004 injury as a result of any action or inaction by DRBA.

22.     Jan Kopacz did not pay the premiums for the LTD policy, and the benefits were provided to him without any charge to him.

23.     LTD benefits have been made available to all permanent, full time employees of the DRBA for more than 25 years.

24.     Once he became disabled, he remained eligible for medical and life insurance benefits and did not pay any portion of the premium for these benefits.

25.     While employed by the DRBA, Kopacz was not provided with any food or lodging onboard DRBA ferries on which he served.