**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

Delaware River and Bay Authority

                Plaintiff                C. A. No. 07-0008SLR

      v.

Jan D. Kopacz

                Defendant

**OPENING POST-TRIAL BRIEF OF**
**DEFENDANT, JAN D. KOPACZ**

Of Counsel:

E. Alfred Smith
E. Alfred Smith and Associates
219 Sugartown Road Ste D-302
Wayne, PA 19087
610-254-8209
Smithsealaw1@verizon.net

                      SEITZ VANOGTROP AND GREEN, P.A.
                      Bernard A. Van Ogtrop (DSBA No.447)
                      222 Delaware Ave., Ste 1500
                      Post Office Box 68
                      Wilmington, DE 19899
                      302-888-7601
                      Bvanogtrop@svglaw.com

## **TABLE OF CONTENTS**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Nature and Stage of the Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

### **Argument**

I.      Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.     The obligation to pay maintenance is exclusively that of the shipowner. . . . . . . . . . . . . . 8

III.    DRBA is not entitled to the credits it seeks and Kopacz never waived his right to
        maintenance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.     Kopacz is not seeking a double recovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.      Kopacz is entitled to prejudgment interest, attorney's fees and consequential damages. . 14

        A.      Prejudgment Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        B.      Attorney's fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        C.      Consequential Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI.     This Court should not withdraw the right to maintenance from DRBA's seagoing
        personnel simply because they do not sleep aboard the ferries when working. . . . . . . . . 18

VI.     Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

*Aguilar v. Standard Oil Co., 318 U.S. 724,735 (1943).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*Barnes v. Andover Co., L.P., 900 F.2d 630 (3rd Cir. 1990)* . . . . . . . . . . . . . . . . . . . . . . . . 8, 14, 18

*Cox v. Dravo Corp. 517 F. 2d 620 (3rd Cir. 1975).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Deisler v. McCormack Aggregates Co., 54 F.3d 1074, 1087 (3rd Cir. 1995)* . . . . . . . . . . 14, 16, 17

*Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 535 (9th Cir. 1962)* . . . . . . . . . . . . . . . . . . . . . 10

*Kopacz v. Delaware River and Bay Authority, C.A. No. 06C-09-083 JEB, Superior Court for the State of Delaware in and for New Castle County* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kopacz I, 2007 WL 2623605* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sampsell v. B & I Welding Services and Consultants, 638 So.2d 477 (La. App. 4th Cir. 1994) writ den. 644 So.2d 397 (La. 1994)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Shaw v. Ohio River Co., 526 F.2d 193 (3rd Cir. 1975).* . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 15

*Smith v. Delaware Bay Launch Service, Inc., 842 F. Supp. 770 (D. Del. 1994) affd. 54 F.3d 770 (3rd Cir. 1995).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith v. Delaware Bay Launch Service, Inc., 972 F. Supp.836, 847 (D. Del. 1997).* . . . . . . . 8, 18

*West v. Midland Enterprises, Inc., 227 F.3d 613 (6th Cir. 2000).* . . . . . . . . . . . . . . . . . . . . . . . . 16



Jones Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 11, 12, 17

Shipowners' Liability Convention, 54 Stat. 1693 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 17

**Nature and Stage of the Proceedings**

Defendant (Kopacz) suffered an on the job injury on December 24, 2004 and first received his full base wages for 90 days in accordance with the policy of the plaintiff, Delaware River and Bay Authority (DRBA).  Thereafter he was transferred to the long term disability plan underwritten by Hartford Life and Accident Insurance Company (Hartford) and, pursuant to the policy provisions, received 60% of his base wages, which was almost the same amount as his monthly board and lodging expenses.  He applied for Social Security benefits as required by Hartford's policy, and he was granted benefits in October, 2006.  Hartford was duly notified of this, and it demanded that Kopacz return $16,607.92 as required by the policy.   Kopacz refused on the advice of counsel.  Discussions between counsel were unavailing, and DRBA filed this declaratory judgment action seeking a declaration that it owed no maintenance to Kopacz. Kopacz then retained counsel, and after discovery this case was tried to the Court on September 24, 2007.

**Summary of Argument**

1.   The obligation to pay maintenance is that of the shipowner, and the method by which it is paid  is irrelevant so long as it is not encumbered by restrictive provisions and the seaman receives his maintenance promptly and concurrently with the need.

2.   The insurance policy in issue is filled with conditions and other provisions which are inimical to the principles underlying the maintenance obligation.  In particular, it obligates the seaman to repay all sums received from Social Security and all sums received for lost wages recoverable under the Jones Act.  It permits Hartford to file suit to recover all sums it paid the seaman in error if it determines that it made an error.  In this case, the amounts to which Hartford

can claim a credit equal the entire amount it paid Kopacz before it discontinued its payments.  In short, Kopacz will have received nothing from Hartford when his state court action has been resolved.

3.   Kopacz is not seeking a double recovery but is legally entitled to the full sum of his maintenance from April 5, 2005 to April 5, 2007 in the amount of $52,560 plus prejudgment interest as mandated by the Third Circuit.

4.   Kopacz is also entitled to recover consequential damages for the pain and suffering attendant upon having his maintenance wrongfully withheld by DRBA and attorney's fees because he was required to retain counsel to recover his maintenance because DRBA acted in bad faith and its recalcitrance is continuing.

## Statement of Facts

Kopacz began working for DRBA as a part-time employee in 1997 and achieved permanent, full-time status in January 2001. (N.T. 66) He was an Able-bodied seaman (Deck Hand) responsible for the general operation of the ferry. (N.T. 66)

On December 24, 2004 the M/V DELAWARE was being tied up in Delaware at the end of the day. (N.T. 68; Exs. D2a,2b) The crew was one man short because one of the deckhands had gotten off in Cape May to spend Christmas with his girlfriend.  This caused the tie up to be done by two deckhands instead of the normal three, and the one working with Kopacz was a woman. While attempting to connect the shore power cable to the vessel, the cable, which was being held by the woman, made a sudden movement which Kopacz did not expect, and he bore the full weight of the cable as well as the plug, and this threw him off balance.  The plug and the cable are each very heavy, and normally this part of the tie up procedure is done by three persons because

the plug and cable are both bulky and  heavy and the procedure is awkward and difficult at best.(N.T. 68, 69; Exs. D2a and D2b)

Kopacz suffered a herniated disc at L4/L5, which was repaired surgically at Johns Hopkins Hospital.  He stopped working on January 5, 2005 and has not been able to work since that time due to his injury. (N.T. 70, Stip. Par.20)

The parties have stipulated that Kopacz's monthly living expenses totaled $2190 and that he reached maximum medical improvement on April 5, 2007.  The maintenance in issue is therefore for the period April 5, 2005 until April 5, 2007 at $2190 per month as stipulated by the parties.

In accordance with DRBA's policy applicable to all employees, shoreside and seaside alike, Kopacz was paid his full base wages (not including overtime) for the first ninety days after he stopped working.  (N.T. 42, 72)  DRBA insisted that Kopacz apply to its long term disability carrier, Hartford, and Kopacz did so.  Because Hartford was slow in approving Kopacz's claim, DRBA paid Kopacz annual leave and accumulated sick leave, and this was not intended as a maintenance payment but was just something to tide him over until Hartford began paying. (N.T.42-48)   DRBA also paid Kopacz $15 per day as maintenance because it was accustomed to making these payments as required by the previous LTD carrier, and DRBA expected this payment to reduce Hartford's monthly payment in accordance with past practice. (N.T. 36, 37, Stip. Par. 9)   Hartford, however, did not deduct the $15 per day from its monthly payments to Kopacz, so DRBA stopped paying it.  (N.T. 37)

The Hartford policy which is the centerpiece of this dispute provides in relevant part as follows:

## Calculation of Monthly Benefit

How are Disability benefits calculated?

\*     \*     \*

If you are Disabled and not receiving benefits under the Return to Work Incentive, we will calculate your Monthly Benefit as follows:

1.  multiply your Monthly Income Loss by the Benefit Percentage;
2.  compare the result with the Maximum Benefit; and
3.  from the lesser amount, deduct Other Income Benefits.

(Ex.D4a, Page 7)

Other Income Benefits mean the amount of any benefit for loss of income, provided to you or to your family, as a result of the period of Disability for which you are claiming benefits under this plan.  This includes any such benefits for which you or your family are eligible or that are paid to you, to your family or to a third party on your behalf, pursuant to any:

1.  temporary disability benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges for such benefits;

\*     \*     \*

Other Income Benefits also mean any payments that are made to you, your family, or to a third party on your behalf, pursuant to any:

2.  permanent disability or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law or substitutes or exchanges of such benefits;

(Ex.D4a, Page 16)

\*     \*     \*

The policy also provides that if Other Income Benefits are paid in a lump sum or

settlement, Kopacz is obligated to provide Hartford with proof satisfactory to Hartford of the

amount attributed to loss of income and the period of time covered by the lump sum or settlement.

(Ex.D4a, Page 17)   Hartford would then pro rate the lump sum over the period of time included.

If Kopacz does not provide such proof, Hartford may assume the entire lump sum is for loss of

-4-

income and the period of time to be 24 months.  (Ex.D4a, Page 17)  This provision then refers the reader to the provision entitled, What happens if benefits are overpaid? (Ex.D4a, Page 17)

What happens if benefits are overpaid is found on Page14.  It defines overpayment as including "1.  retroactive awards of Other Income Benefits" and "4.  an error we may make."  This provision then gives Hartford the right to collect an overpayment from Kopacz through any means legally available to it.

Long term disability benefits have been made available to DRBA's permanent, full-time employees, shoreside and seamen alike, for 25 years. (N.T. 29, 40,41; Stip. Par.23) In fact, DRBA's policy is to treat all permanent, full-time employees the same.  (N.T. 29)   Long term disability payments are simply one of the many benefits that DRBA makes available to its permanent, full-time employees.  (N.T. 29)

Seagoing personnel constitute the collective bargaining unit recognized by DRBA (Ex. D3a, Par.2.1) The union contract, in force from July 1, 2004 through June 30, 2007, obligates DRBA to "continue to provide to all permanent full-time employees long- term disability plans that are offered to all Authority employees generally." (Ex. D3a, Page 46 Par.34.3)   Nothing in the union contract requires seamen to accept the long term disability payments in lieu of maintenance, and there is nothing in the contract which suggests that DRBA bought the Hartford policy as a result of bargaining with the union.  (Ex. D3a; N.T. 41,42.)  In short, there is nothing in the union contract concerning maintenance.  (N.T. 41)

DRBA has never bought an insurance policy specifically to cover only its maintenance obligation because it treats all permanent employees "consistently." (N.T. 41)

After Kopacz's claim was approved, his counsel wrote to Hartford and advised it that DRBA owed an obligation to pay Kopacz maintenance, and this amount closely approximated the amount of Hartford's monthly benefit payments.  Counsel also referred to DRBA's payments of $450 monthly and attempted to have Hartford exonerate his client, in writing, from any charge of Insurance Fraud because counsel felt, and still feels, that maintenance payments were Other Income Benefits for  which Hartford was entitled to a credit.  Hartford responded that it did not consider maintenance to be Other Income Benefits, and counsel thereafter tried to get Hartford to acknowledge that it would never consider that position to be an error, but it never did so. (Exs. D4b-D4g)

On or about October 12, 2006 Kopacz received a lump sum payment of $17,142 from Social Security.  (Stip. Par. 12)   By letter dated October 27, 2006 Hartford demanded that Kopacz repay it $16,607.92, which had been overpaid to him in light of the retroactive Social Security benefit paid.  (Stip. Par. 13, Ex. D4h)   Kopacz refused to repay this to Hartford, and his monthly benefit payments were suspended as a result.  Kopacz has received no further benefits to this day. (Stip. Par. 14)

Both counsel had discussions during which DRBA's counsel offered to have DRBA repay the Social Security benefit to Hartford if Kopacz would agree to repay it if DRBA were successful in its declaratory judgment suit, but Kopacz's counsel refused to permit his client to sign such an agreement.  Counsel said that Kopacz would obey any Court order compelling him to repay such sum, but he was unwilling to have his client make any written agreement with DRBA concerning maintenance.  (Stip. Par.16)  DRBA's counsel never agreed to have DRBA make up the monthly deductions that Hartford would take for the Social Security payments that Kopacz would receive,

which counsel requested.  (Ex.D1a Par. 12) It was clear that the offer by DRBA to repay Hartford contemplated a suit by DRBA, so DRBA was offering only a provisional settlement which would include a lawsuit in any event.

Since October 2006 Kopacz has received $1167.00 from Social Security monthly.  (Stip. Par. 17)  Kopacz has received no other income, so from October 2006 until April 2007 Kopacz had to subsist on the $1167 monthly Social Security benefit.  (N.T. 91,92)   DRBA filed this declaratory judgment action, and in its Complaint and early discovery answers insisted that it was entitled to a credit for the long term disability payments made by Hartford.  It contended that Hartford's payments and Social Security's payments exceeded Kopacz's stipulated monthly expenses so that DRBA was relieved of its obligation entirely. (Exs. D1a-D1c)

## Argument

### I.   Introduction

Prior to trial Kopacz submitted a Trial Brief which discussed the issues *in extenso*.  Rather than burden the Court with a lengthy restatement of that material, Kopacz incorporates his Trial Brief herein by reference and will try to avoid  repetition

### II.   *The obligation to pay maintenance is exclusively that of the shipowner.*

DRBA seeks to have this Court rewrite the law of maintenance to enable the shipowner to be no more than an overseer or umpire which assembles funds from sources other than itself to satisfy what has historically, for hundreds of years, been the shipowner's (or the ship's) sole obligation.

The two most instructive Third Circuit cases detailing the development of the law of maintenance are *Barnes v. Andover Co., L.P., 900 F.2d 630 (3rd Cir. 1990)* and *Cox v. Dravo Corp. 517 F. 2d 620 (3rd Cir. 1975)*.  *Cox* speaks in terms of the "vessel's" obligation to the seaman, whereas *Barnes* identified the shipowner as the one owing the obligation to pay maintenance.  *Barnes* also cites the *Shipowners' Liability Convention, 54 Stat. 1693* in which Article 2  "places liability on shipowners for sickness and injury occurring during employment." Further, *Barnes* cites Article 4 as providing that "[t]he shipowner shall be liable to defray the expense of medical care and maintenance until the sick or injured person has been cured." 900 F.2d at 634

This Court has recognized that the shipowner owes the obligation and that the obligation has existed for centuries.  *Smith v. Delaware Bay Launch Service, Inc., 972 F. Supp.836, 847 (D. Del. 1997)*

The most widely cited passage which succinctly sets forth the policy considerations and how the seaman's right is to be considered is in *Aguilar v. Standard Oil Co., 318 U.S. 724,735 (1943)*, and it reads as follows:

> Certainly the nature and foundations of the liability require that it be not narrowly confined or whittled down by restrictive and artificial distinctions defeating its broad and beneficial purposes. If leeway is to be given in either direction, all the considerations which brought the liability into being dictate it should be in the sailor's behalf.

DRBA has cited no authority which supports the idea that a shipowner's obligation is any less than to make certain that the injured seaman is paid, on an unrestricted basis, enough money to cover the board and lodging expenses which he pays while he is disabled.

## III.    *DRBA is not entitled to the credits it seeks and Kopacz never waived his right to maintenance.*

A case in point and controlling on the issue of a credit for long term disability payments made pursuant to an insurance policy is *Shaw v. Ohio River Co., 526 F.2d 193 (3rd Cir. 1975)*. There the Third Circuit held that benefits payable pursuant to a long term disability policy, virtually identical to the policy in issue, could not be set off against the shipowner's maintenance obligation. They were considered part of the benefits available to the seaman and a form of deferred compensation designed to replace lost wages, not to provide for room and board.

Apart from *Shaw*, there are other considerations which militate against a credit because Hartford is entitled to credits for various items, and these credits will probably entitle Hartford to recover from Kopacz all of the money it paid in benefits, to wit, $38,515.30.

The first credit, which has not been repaid, is for Social Security benefits, and this is an Other Income Benefit. (Ex. D4a, Page 16, par. 5)   The Court specifically asked counsel to address this in their post-trial briefs, and DRBA concedes that it found no authorities on this issue, which has been Kopacz's experience as well.   DRBA does not, however, discuss the cases cited in Kopacz's Trial Brief which denied credits for payments made under a state unemployment disability act and for payments made pursuant to a workers' compensation law.   These cases are *Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 535 (9th Cir. 1962)* and *Sampsell v. B & I Welding Services and Consultants, 638 So.2d 477 (La. App. 4th Cir. 1994) writ den. 644 So.2d 397 (La. 1994).*   The reasons were that such credits would not further the purposes for which maintenance is paid and they would unnecessarily encumber the seaman's right to prompt, unfettered payment concurrently with the need.

Kopacz applied for Social Security benefits because Hartford's policy compelled him to do so.   Hartford's interest in so doing was to reduce their monthly benefit payments.   DRBA had no part in requiring Kopacz to apply.   Indeed, DRBA's Risk Manager admitted that she had never asked a seaman to pay back to DRBA Social Security payments the seaman was receiving against the maintenance obligation of DRBA. (N.T. 51, 51) There is no basis for so doing because Social Security is wholly unrelated to board and lodging expenses which a seaman can recover only while disabled.   DRBA certainly makes no claim that it paid all of the Social Security taxes, and it can't because Kopacz was gainfully employed for many years before he started working for DRBA in 1997.   This is a governmental program applicable to all workers and supported by a compulsory tax, so DRBA has never had any input in the initiative which created the Social Security System.   Indeed, it would be very harsh to penalize a seaman, who has contributed for

-10-

years, by compelling him to credit his Social Security payments against an obligation which has been put on the shipowners to enable a seaman to subsist while injured.

The next credit which can be sought by Hartford is for a recovery of part of a settlement or recovery which Kopacz makes pursuant to the Jones Act.  As stated in DRBA's brief, Kopacz has a Jones Act case pending in the state court, styled as *Kopacz v. Delaware River and Bay Authority, C.A. No. 06C-09-083 JEB, Superior Court for the State of Delaware in and for New Castle County*.  This Court can judicially notice this suit because it is pending within this Court's territorial jurisdiction.   As in all Jones Act cases, the suit seeks a recovery for, *inter alia*, past wage loss, diminution of future earning capacity, loss of life's pleasures and pain and suffering. The basic facts of this suit are set forth in Kopacz's testimony (N.T. 68,69) and his statement (Ex. D2b), and these show that DRBA has virtually no defense on liability.  From any recovery Kopacz must repay so much of the recovery, by settlement or verdict, as is attributable to past wage loss during the period he was receiving benefits from Hartford.  This proof must be satisfactory to Hartford, who has the discretion to allocate the entire settlement to a two year period if it considers the proof unsatisfactory.  This also is an Other Income Benefit. (Ex. D4a, Pages 16, 17), and the Hartford policy provision pertaining to it specifically refers to the provision giving it rights if benefits are overpaid.. (Ex. D4a, Page 17)

The point of the foregoing is that the suit before the Court is not dispositive of all issues involving Hartford.  When the Jones Act suit is resolved, Hartford must be dealt with again, so instead of a double recovery which DRBA claims Kopacz is seeking, the truth of the matter is that Kopacz is getting nothing  from Hartford because he can't avoid having to pay it back.

-11-

The last possible credit which Hartford can seek is a recovery of all of its payments because it made an error.  Its policy entitles it to do so. (Ex. D4a, Page 14) The error was in not considering maintenance payments to be "temporary disability payments" under a law similar to the Jones Act.   Counsel pointed this out to Hartford shortly after Hartford approved the claim. (Exs. D4b-D4g)  Historically, DRBA's long term disability insurer  had required DRBA to pay maintenance at the rate of $450 per month, and the insurer deducted this from its monthly benefits.   DRBA's Risk Manager so testified.  (N.T.36,37)   Had Hartford accepted counsel's explanation, no monthly benefits would have been paid because the monthly maintenance obligation of DRBA was almost equal to the monthly benefit of Hartford..  However, Hartford took an unusual position.  This was done by someone not a lawyer, and when it is reviewed by counsel, he/she may conclude that the earlier determination was an error, and the policy entitles Hartford to recover the overpayment.

Counsel's letters to Hartford at the outset (Exs. D4b-D4g) show that Kopacz was not waiving his rights by accepting the Hartford payments as maintenance benefits.  Counsel tried to protect Kopacz from a suit based on an error, but this was unavailing since that prospect still hangs over his head.  This Court's judgment on this issue will not protect him either since Hartford is not a party, so any judgment is not binding on it.

 DRBA's claim for credits for the annual and sick leave benefits paid to Kopacz is also contrary to the holding of *Shaw, supra*.  There the Court said that accumulated leave time is another method of deferred payment, and there is no basis for crediting accrued leave against the vessel owner's maintenance obligation.  *526 F.2d at 199*  Furthermore, DRBA's Risk Manager

-12-

testified that when she paid those benefits to Kopacz, she was not intending that to cover DRBA's maintenance obligation. (N.T.45,46)

Finally, the claim for a credit for the ninety days of wages paid at the outset of Kopacz's diability (from January 5, 2005 until April 5, 2005) is directly contrary to the testimony of Ms. Miller. She agreed that there is no claim for any maintenance for the first ninety days after Kopacz stopped working, and this lawsuit has always been about a claim for maintenance beginning on April 5, 2005, the date the Hartford benefits began.

In summary, the metamorphosis of this lawsuit was from an outright claim for a credit for Hartford and Social Security payments to a lump sum analysis which had to include the first ninety day and leave payments in order to reach the total necessary to make the argument.

## IV.    *Kopacz is not seeking a double recovery.*

Kopacz has always sought, and is now seeking, no more than his maintenance for the period of his disability, from April 5, 2005 until April 5, 2007, a total of $52,560. The problems arise because DRBA is attempting to pass off its legal liability onto an insurance policy that was not obtained to satisfy its maintenance obligation (N.T. 41); was not obtained by reason of the union contract (N.T. 41;Ex.D3a); was a benefit made available to all full-time permanent employees, seagoing and shoreside, for many, many years before the union was certified (N.T. 40) and contained a number of rights in the insurance company to recover back virtually all of its benefit payments. This is just the opposite of the *Aguilar* command that the payment scheme not be "narrowly confined or whittled down by restrictive and artificial distinctions defeating its broad and beneficial purposes." *Aguilar, supra at 735.*

-13-

Kopacz is a ward of this Court, and in *Barnes* Judge Sloviter made it clear that the wardship doctrine has not been weakened one iota by reason of the rise of unions. *900 F.2d at 637*. In *Barnes* the Court protected seamen by preventing a union from bargaining away a seaman's common law right to maintenance by agreeing to a wholly inadequate daily rate. This Court cannot protect Kopacz from the provisions of the Hartford policy because any decisions it makes are not binding on Hartford because it is not a party. The Court can, however, recognize that Kopacz needs protection from DRBA because a denial by this Court of Kopacz's claim for full benefits leaves him to the tender mercies of an insurance company which has a very sound basis for recovering all of the payments that it made when they should have been made by DRBA.

**V.    *Kopacz is entitled to prejudgment interest, attorney's fees and consequential damages.***

    **A.    Prejudgment Interest.**

*Deisler v. McCormack Aggregates Co., 54 F.3d 1074, 1087 (3rd Cir. 1995)* is mandatory in its wording that "Interest must be allowed if plaintiff is to be truly made whole by defendant's breach of its duty to provide maintenance and cure." *Kopacz I, 2007 WL 2623605* was a Not Precedential opinion, so it did not undermine *Deisler* in any way. Furthermore, the amount of prejudgment interest is infinitesimally small compared to DRBA's net worth of several hundred million dollars. To suggest that prejudgment interest is punitive is ludicrous.

    **B.    Attorney's fees.**

*Deisler, supra at 1087* held that a seaman may recover attorney's fees if the proof shows that the shipowner was "callous" or "recalcitrant" when failing to meet its obligations. The rule is written in the disjunctive, so the seaman need only prove one but need not prove both. DRBA's recalcitrance is shown by its continued refusal to pay anything whatsoever toward satisfying its

legal obligation to Kopacz.  That recalcitrance required Kopacz to retain counsel because DRBA

started the lawsuit, not Kopacz.  It also forces Kopacz to deal exclusively with Hartford, and that

will almost surely involve litigation unless Hartford is repaid in full.

The bad faith is shown because there was no reasonable basis for starting the lawsuit.

*Shaw, supra*, was well known to counsel because it figured prominently in her brief in *Kopacz I,*

*supra*. (Exs. D5a, D5b)  This brief was prepared during the month of November and filed on

December 4, 2006. (Ex. D5a)   Furthermore, DRBA had available to it two very capable,

experienced maritime personal injury lawyers who are experts in the law of maintenance as

admitted by Ms. Miller. (N.T. 53-55, Ex. D6a)

With three maritime lawyers available for advice on maintenance issues, it is difficult to

see how this lawsuit was justified when the maintenance issues are so obvious and the holdings of

*Shaw* are so clear.  The Complaint (Ex. D1a) and the discovery responses (Exs. D1b, D1c) show

that the suit was premised on DRBA's claiming a credit for the payments made by Hartford, so

*Shaw* was clearly ignored.  As of trial DRBA was claiming a credit for all payments made by it,

Hartford and Social Security despite its only witness' testimony that the first ninety days' payment

by DRBA was not involved; no authority for the claim to credit for Social Security was available

and the authorities for analogous payments disallowed the credit and the clear holdings of *Shaw*

were that the accumulated leave could not be claimed nor could the payments by Hartford.

Starting a declaratory judgment action does not protect the shipowner from a finding that

it acted unreasonably and in bad faith.  If anything, it enhances it because DRBA thus forced

Kopacz to retain counsel to get what was rightfully his and has steadfastly refused to pay anything

even to the point of requiring a trial and a decision by this Court when the controlling law is clearly

to the contrary. DRBA repeatedly argues that it made enough funds available for Kopacz to meet

his board and lodging expenses, yet from October 2006 until April 2007 Kopacz received nothing

except his Social Security monthly payment of $1167 to meet monthly expenses of $2190 as

stipulated by DRBA. To make its argument DRBA must include payments it made to Kopacz

from January 5, 2005 until April 5, 2005, so apparently Kopacz was expected to put aside the

excess against the day when his maintenance payments would be approximately half of what his

board and lodging expenses were. That makes no sense whatsoever.

C.    **Consequential Damages**

Kopacz is also entitled to consequential damages and relies on the contentions in his Trial

Brief. Emotional distress unaccompanied by a touching can be the basis for a maintenance and

cure claim. *West v. Midland Enterprises, Inc., 227 F.3d 613 (6th Cir. 2000).* It is no stretch to hold

that such damages are included in the scope of "consequential" damages, which are broader than

"compensatory" damages, as set forth in *Deisler, supra at 1082-1087.*

Nowhere in *Deisler* is there any suggestion that the "only" damages recoverable for an

unreasonable failure to pay are those for exacerbation of the injury as argued by DRBA. That is one

of the elements certainly, but the outer reach of consequential damages has not been defined. For

example, a seaman is certainly entitled to recover lost wages in addition to pain and suffering *See*

*Deisler, supra.* The seaman is also entitled to recover transportation costs to obtain treatment. *See*

*Sims v. Unites States War Shipping Adm., 186 F.2d 972, 973,974 (3rd Cir. 1951).*

Nowhere in *Deisler* is there any suggestion that the failure to receive maintenance caused an

aggravation of Deisler's injuries. Instead, the Court affirmed the district court's classification of

Deisler's damages as "lost wages and damages for his pain and suffering" as compensatory. *54 F.3d*

*at 1083, fn. 16* The clear implication of this is that the damages were for the pain and suffering attendant upon the failure to receive maintenance.  It seems fairly obvious to Kopacz that the obligation to pay maintenance is so compelling that the broadest scope of damages possible for failure to pay ought to be the rule, and that certainly is what *Deisler* suggests. If the recovery is limited to maintenance only, that simply encourages shipowners to be as recalcitrant as DRBA is. That is somewhat cruel, considering that the recipient is an injured hourly paid worker who can't work and must suffer some anxiety about his future due to a lack of income and the uncertainty of a full recovery.

DRBA cites Jones Act cases in support of its contentions.  This is inappropriate since the Jones Act is statutory and the courts are therefore more limited in fashioning remedies.  Similarly, Kopacz repeats the statement in his Trial Brief that DRBA miscited *Smith v. Delaware Bay Launch Service, Inc., 842 F. Supp. 770 (D. Del. 1994) affd. 54 F.3d 770 (3rd Cir. 1995)*.  That case dealt with a claim for an aggravation of an injury due to failure to pay, so it is not relevant to this case because here there is no such claim, by stipulation.

-17-

**VI.     *This Court should not withdraw the right to maintenance from DRBA's seagoing personnel simply because they do not sleep aboard the ferries when working*.**

It may be that the real reason for this lawsuit is found on pages 9 and 10 of DRBA's brief, where they ask this Court to reconsider an earlier opinion and hold that all of the seapersons employed by DRBA be denied the right to maintenance when they become ill or injured while in the service a  vessel because they don't sleep aboard the ferries while working.  That would no doubt save DRBA an enormous amount of money, but it does so at the expense of wage earners who need some income to sustain themselves because they can't work but they have to eat and sleep and they cannnot get workers' compensation.  This heartless contention tends to belie DRBA's other arguments throughout its brief that it is generous in the benefits it provides.

In *Smith v. Delaware Bay Launch Service, Inc., 972 F. Supp. 836 (D.Del. 1997)* this Court rejected the same arguments that DRBA is now making and carefully analyzed the statements made by Judge Sloviter in *Barnes, supra*.  This Court correctly interpreted those statements as an approval of the view expressed by other judges as cited by Judge Sloviter that seapersons who live ashore while working are nevertheless entitled to maintenance.  DRBA advances no reasons whatsoever which would justify an about face by this Court from a well thought out opinion.

## VI.    *Conclusion*

For the foregoing reasons Kopacz submits that this Court should award him his maintenance

of $52,560 plus prejudgment interest, consequential damages for pain and suffering and attorney's

fees, in amounts within the discretion of the Court.


                                        Respectfully,


                                        /s/ Bernard A. Van Ogtrop
                                        Bernard A. VanOgtrop (DSBA No.447)
                                        SEITZ VAN OGTROP & GREEN, P.A.
                                        222 Delaware Ave. Suite 1500
                                        Wilmington, DE. 19899
                                        (302) 888-7601
                                        Bvanogtrop@svglaw.com

Of counsel:
E. Alfred Smith
E. Alfred Smith and Associates

## <u>CERTIFICATE OF SERVICE</u>

       I, Bernard A. Van Ogtrop, hereby certify that on the date below I electronically filed with the Clerk of Court the Opening Brief of Defendant, Jan D. Kopacz, using CM/ECF which will send notification of such filing to the following:

       Carmella P. Keener, Esquire (DSBA No. 2810)
       Rosenthal, Monheit & Goddess, P.A.
       919 N. Market Street, Suite 1401
       P.O.Box 1070
       Wilmington, DE 19899-1070
       (302) 656-4433
       ckeener@rmgglaw.com
       Attorneys for Delaware Rive and Bay Authority

       I also served a copy of this brief by e-mail on the following:

       Mary Elisa Reeves, Esquire
       Donna Adelsberger & Associates, P.C.
       6 Royal Avenue
       P.O. Box 530
       Glenside, PA 19038-0530
       (215)576-8690
       mreeves@dlalawyers.com

                           /ss Bernard A. Van Ogtrop
                           Seitz Van Ogtrop & Green, P.A.
                           222 Delaware Avenue, Suite 1500
                           P.O. Box 68
                           Wilmington, DE 19899
                           (302) 888-7601
                           Bvanogtrop@svglaw.com

-20-