IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELAWARE RIVER AND BAY AUTHORITY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JAN D. KOPACZ,<br><br>　　　　　　Defendant. | C.A. No. 07-0008-SLR |

**POST-TRIAL REPLY BRIEF OF
PLAINTIFF, DELAWARE RIVER AND BAY AUTHORITY**

OF COUNSEL:
Mary Elisa Reeves, Esquire
DONNA ADELSBERGER
& ASSOCIATES, P.C.
6 Royal Avenue, P.O. Box 530
Glenside, PA 19038-0530
(215) 576-8690

ROSENTHAL, MONHAIT & GODDESS, P.A.
Carmella P. Keener (DSBA No. 2810)
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
ckeener@rmgglaw.com

*Attorneys for Plaintiff,
Delaware River and Bay Authority*

Date Filed: January 2, 2008

## **TABLE OF CONTENTS**

|   | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| ARGUMENT | 1 |
| CONCLUSION | 6 |

## TABLE OF AUTHORITIES

Page

Cases

*Cahill v. Clement*,
  2007 A.M.C. 2384 (M.D. Fla. 2007) ................................................................................ 3

*Covert v. U.S.*,
  2003 WL 23305264 (E.D. Tex. Oct. 23, 2003) ................................................................ 4

*Gooden v. Sinclair Refining Co.*,
  378 F.2d 576 (3d Cir. 1967) ............................................................................................ 2

*Gypsum Carrier, Inc. v. Handelsman*,
  307 F.2d 525 (9th Cir. 1962) ........................................................................................... 4

*Hunter v. American West Steamship Co.*,
  2007 WL 895092 (W.D. Wash., March 21, 2007) .......................................................... 4

*Kopacz v. Delaware River and Bay Authority*,
  2007 W.L. 2623605 (3d Cir. Sept. 12, 2007). ................................................................. 5

*Shaw v. Ohio River Co.*,
  526 F.2d 193 (3d Cir. 1975) ............................................................................................ 3

## ARGUMENT

In his brief, Kopacz asks this Court to speculate on events which may or may not occur in the future. He asks this Court to speculate on future decisions by the Hartford, a state court jury and Delaware state court judges. This Court must make its determination based on the **evidence** presented at trial, and not on pure speculation.

In the first instance, Kopacz suggests that the Hartford **might** seek to recover some unspecified amount of money from Kopacz because his "counsel felt, and still feels, that maintenance payments were Other Income Benefits for which Hartford was entitled to a credit." (Defendant's Post Trial Brief at 6). This is an incredible position because counsel has already advised the Hartford of these "feelings", to which Hartford responded, not once, but twice, that they did not consider maintenance to be "other income benefits" under the policy and that no credit would be sought. (Exhibit D-4D, D-4F) He asks this Court to speculate 1) that the Hartford might change its mind sometime in the future and 2) that the principals of waiver and estoppel would not apply even if it did change its mind.

Next, Kopacz also asks this Court to speculate that the Hartford will seek a credit for any damages awarded as lost income in a state court jury trial which has not yet been scheduled.[1] This argument requires several layers of speculation. Kopacz asks this Court to award maintenance, in addition to disability benefits, because he **might** have to repay

---

[1] Although the DRBA does not agree that any set off would be required for a Jones Act tort recovery as defined by the policy, which applies to worker's compensation type awards, the Hartford may be able to seek a credit for any tort damages awarded against "the portion of a settlement or judgment, minus associated costs, of a lawsuit that represents or compensates for your loss of earnings." (*See* Exhibit D-4A at 16).

1

the Hartford **if** he is awarded damages for lost income in the pending state court action.[2] In the first place, this argument is premised on speculation that he will, in fact, prevail in the state court action, and that, if he prevails, he will receive an award for lost income.

There is no evidence[3] before this court which would suggest that Kopacz will prevail, and the DRBA has contested both liability and damages in that case. In addition to the liability defenses, the DRBA maintains that Kopacz was contributorily negligent, that he had a pre-existing condition, that he has never been completely disabled, and that he is and has been capable of other, less strenuous, employment since this accident. [Neither Kopacz himself nor his medical experts believe that he is totally disabled. (Exhibit P-8 at 3; Exhibit P-10 at 4)]. No discovery, expert or pre-trial deadlines have been set by the state court, and this Court should not make a ruling based on speculation as to the outcome of a lawsuit which is pending in another forum.

To the extent that a seaman would enjoy a double recovery by virtue of an award of tort damages for lost wages and maintenance/disability benefits, the DRBA submits that an offset would be in order, either in the form of a credit to the employer or the disability carrier against any lost income damages awarded as a result of his Jones Act or unseaworthiness claims. *Gooden v. Sinclair Refining Co.*, 378 F.2d 576, 581 (3d Cir. 1967) ("a seaman cannot have both damages and maintenance and cure if there would result any duplication of recovery upon a single claim").

---

[2] In reality, any claim that the Hartford may have because of a judgment awarded in the state court case will likely be settled in connection with Kopacz' current claim against Hartford on the basis of its decision to terminate benefits since he is not disabled from "any occupation."

[3] Kopacz cites to his own testimony as to how the accident occurred. Clearly, that testimony was offered and accepted only as background information, and DRBA could not be expected (or even allowed) to counter that testimony, since fault is irrelevant to a maintenance and cure claim.

In other words, if DRBA is required to pay maintenance in this action, it would seek an offset of such maintenance against any jury award for lost wages, since Kopacz has always had to pay his room and board from those wages. If, however, this Court holds that the DRBA's maintenance obligation has been fully satisfied, the DRBA would not be entitled to an offset to the extent Kopacz is required to repay the Hartford by virtue of the damages award. In either case, Kopacz will be fully compensated for his lost income, but will not receive a double recovery.

The issue of whether income or benefits should be set off from a tort recovery is generally decided on a case by case basis, after a review of several factors involving the source and nature of the payments. Under the facts of this case, a court would likely decide that the shipowner is entitled to a set off against an award of lost income for any disability payments to the seaman. *Cahill v. Clement*, 2007 A.M.C. 2384 (M.D. Fla. 2007). The Third Circuit has not spoken directly on the subject, although it has indicated that there may be some merit to discarding the collateral source rule in Jones Act cases. *Shaw v. Ohio River Co.*, 526 F.2d 193, 201 (3d Cir. 1975). ("Whatever justification there may be for the collateral source rule in situations where liability is based on fault, there is no perceivable basis for applying it to the no-fault obligation to furnish maintenance and cure."). In this case, the disability policy provides that the credit should be paid to the Hartford rather than to the employer. Again, Kopacz will be fully compensated in either case.

Kopacz' reliance on the Ninth Circuit's decision in *Gypsum Carriers* is misplaced. In that case, the shipowner was not permitted to take a credit for state unemployment disability benefits because the fund was supported primarily by employee contributions. *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525 (9th Cir. 1962). As

3

that Court noted, "maintenance and cure is one of a number of private and public means directed to rescuing the injured seaman and making him whole... It is desirable that all should be viewed as parts of an integrated system and applied in a way which will avoid disproportionate recoveries to particular individuals, whether high or low." *Id.* at 536; *see also Hunter v. American West Steamship Co.*, 2007 WL 895092 at * 3 (W.D. Wash., March 21, 2007). Therefore, the outcome may well have been different if the employer had contributed to the fund from which the benefits were paid. There is no question that the DRBA was the source of the disability policy in question, and that it also made payments into the social security fund through payroll taxes. *See Covert v. U.S.*, 2003 WL 23305264 at *2 (E.D. Tex. Oct. 23, 2003) ("Unlike the situation in **Handelsman,** employers must pay taxes into the Social Security fund, so it is not correct to say that the employer here would benefit from a fund to which it did not contribute. It is true that Mr. Covert also paid some social security taxes. However, seamen pay taxes used to fund U.S. Government Public Health Service hospitals, but that does not entitle them to claim that maintenance should continue while they reside in such a facility.")

Because this Court cannot predict, and should not guess, the outcome of the Kopacz state court negligence/unseaworthiness action, it must decide this maintenance action on its own merits, without regard to the "what ifs" raised by Kopacz. The state court judge will then be in a position to review this Court's decision and mold any jury verdict so as to fairly compensate Kopacz without awarding him a double recovery.

To demonstrate the wisdom of this approach, the Court may wish to review the impact of a decision in the DRBA's favor upon the range of possible outcomes in the state court action:

4

1. If DRBA is **not** found to be at fault, Kopacz will only be entitled to maintenance (i.e. compensation sufficient to meet his stipulated living expenses) for the two year period until he reached maximum medical improvement. DRBA demonstrated at trial that such compensation has been fully paid, albeit from several sources.

2. If, on the other hand, the DRBA **is** found to be at fault, the jury will then have to determine the extent to which Kopacz' negligence contributed to his injuries, and the extent to which his condition was pre-existing. *See, e.g., Kopacz v. Delaware River and Bay Authority*, 2007 WL 2623605 at *2 (3d Cir. Sept. 12, 2007).

3. Assuming **some** liability on the part of the DRBA, the jury will have to determine whether or not Kopacz is entitled to any damages for lost income and the extent to which any such damages are offset by his ability to earn a living in a less strenuous occupation.

4. **If** any lost wages are awarded by the state court jury, Kopacz will then negotiate with the Hartford as to whether the policy requires a repayment by Kopacz. Assuming that Kopacz is completely successful in **all** of his arguments before the state court (an unrealistic assumption), the maximum total compensation paid to Kopacz (whether labeled as tort damages, maintenance or disability benefits) will be an amount equal to his after-tax income had he remained employed at the ferry. This is the amount necessary to put him in the same position as if the accident never occurred.[4]

---

[4] For the purposes of this argument, the DRBA refers only to those damages which would represent lost earnings, and not other types of damages which are potentially recoverable.

5

## CONCLUSION

Given all of the variables which must be explored through discovery and at the trial of the state court action, this Court should not base its decision on what **might** happen in other litigation which will be decided by another judge and jury in a completely different forum. In fact, the outcome of this litigation should not be dependent on whether or not the seaman has filed a tort action at all. Instead, the state court will take this Court's **actual** decision into consideration when adjusting or molding the amount of any jury verdict after trial.

Dated: January 2, 2008

        ROSENTHAL, MONHAIT & GODDESS, P.A.

        By: /s/ Carmella P. Keener
        Carmella P. Keener (DSBA No. 2810)
        919 N. Market Street, Suite 1401
        P.O. Box 1070
        Wilmington, DE 19899-1070
        (302) 656-4433
        ckeener@rmgglaw.com

        *Attorneys for Plaintiff,*
        *Delaware River and Bay Authority*

OF COUNSEL:
Mary Elisa Reeves, Esquire
DONNA ADELSBERGER
& ASSOCIATES, P.C.
6 Royal Avenue, P.O. Box 530
Glenside, PA 19038-0530
(215) 576-8690

## CERTIFICATE OF SERVICE

I, Carmella P. Keener, hereby certify that on January 2, 2008, I electronically filed with the Clerk of Court **REPLY POST-TRIAL BRIEF OF PLAINTIFF, DELAWARE RIVER AND BAY AUTHORITY** using CM/ECF which will send notification of such filing to the following:

| | |
|---|---|
| Bernard A. Van Ogtrop, Esquire | E. Alfred Smith, Esquire |
| Seitz, Van Ogtrop & Green, P.A. | E. Alfred Smith & Associates |
| 222 Delaware Avenue, Suite 1500 | 1333 Race Street, 2nd Floor |
| P.O. Box 68 | Philadelphia, PA 19107 |
| Wilmington, DE 19899 | |

and also by electronic mail upon:

E. Alfred Smith, Esquire
smithsealaw1@verizon.net

/s/ *Carmella P. Keener*
Carmella P. Keener (DSBA No. 2810)
Rosenthal, Monhait & Goddess, P.A.
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
ckeener@rmgglaw.com
  Attorneys for Plaintiff
  Delaware River and Bay Authority